Statement.

# Richmond.

## Virginia Hot Springs Company v. McCray.

January 17, 1907.

Absent, Buchanan, J.

1. LIMITATION OF ACTIONS—*Permanent Nuisance.*—When, by wrongful acts, a permanent nuisance is created, and the injury therefrom is direct, immediate and complete, so that the damages can be immediately measured in a single action, the statute of limitations will begin to run from the creation of the nuisance.

2. LIMITATION OF ACTIONS—*Permanent Sewer—Destruction of Value of a Stream—Eminent Domain.*—Where a permanent sewer system is established whereby the waters of a stream are completely destroyed for all useful purposes, the injury to a lower riparian owner, whose property is damaged or destroyed in consequence thereof, is direct and immediate, and his right of action accrues at once to recover complete damages, and will be barred in five years unless his action for damages be commenced within that time.   Whether the injury was caused by the exercise of the power of eminent domain or not is immaterial, except for the purpose of showing that the structure was of a permanent character.

3. NUISANCE—*Permanency of Structure—Question for Jury.*—Whether or not a structure which causes a nuisance by polluting the waters of a running stream is permanent in its character is a question of fact to be determined by the jury.

4. ESTOPPEL—*Failure to Allege Breach of Duty.*—In an action to recover damages for polluting a stream a plea which alleges that the plaintiff was estopped by his conduct and acquiescence in the construction of a sewer which contaminated the stream, but fails to allege any duty on the plaintiff to have objected to the construction of the sewer by the defendant on his own property, is bad.

Error to a judgment of the Circuit Court of Bath county in

an action of trespass on the case.    Judgment for the plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*McAllister & Nelson* and *Daniel Harmon,* for the plaintiff
in error.

*Benjamin Haden* and *George A. Rivercomb,* for the defen-
dant in error.

CARDWELL, J., delivered the opinion of the Court.

This is a writ or error to a judgment of the Circuit Court
of Bath county in a suit brought by defendant in error to re-
cover of plaintiff in error damages for polluting and befouling
the waters of a certain stream known as Hot Springs Run,
which passes through the property first of plaintiff in error and
then through the lands of defendant in error, which are situated
about four miles below.

It appears that plaintiff in error, the Virginia Hot Springs
Company, acquired the properties it now holds, situated in
Bath county, and which had formerly been used as a summer
resort, and about the year 1892 made a great many valuable
and expensive improvements in the way of hotels, stables, laun-
dries, residences, etc., etc., needed for conducting on a large
scale a health and pleasure resort for the accommodation of
something like 1,000 guests, and making necessary the employ-
ment of about 150 servants and 150 horses; and also constructed
a system of sewerage, emptying into a large sewer, which dis-
charged the collected human and animal excrement, filth, waste,
etc., from the hotels, laundries and other buildings, into the
Hot Springs Run.

The declaration sets out the erection of the buildings, men-
tions the number of guests accommodated, the servants em-

ployed and the horses kept and used by plaintiff in error, the construction of the sewer, the discharge of its contents, etc., into the Hot Springs Run, and charges that by these means the waters of the stream have been rendered and made unfit and unwholesome for the use of man and beast; that the waters have been rendered of no use, value or service to the plaintiff, who has thereby been deprived of the water for use of stock, for washing clothes and for other domestic uses to which water is applied, and of water for the proper cultivation of her land; and that a foul stench has been created which destroys the comfort of her home.

The plaintiff in error (defendant below) offered a plea of the statute of limitations, alleging that the grievances complained of were the consequences flowing from the construction and use of a system of sewers which were established at great cost in a substantial and permanent manner; that the use of said sewers was and is permanent and indispensable to the enjoyment of plaintiff in error's property; that from the time of their construction the use of these sewers has continued without interruption and in the same manner, and the pollution of the waters by their use has been continuous in the same manner and to the same extent during the whole period from the construction of the sewer up to the institution of this suit.

This plea was, on motion of defendant in error, excluded; and this ruling of the court constitutes plaintiff in error's first assignment of error.

The question presented is whether the case falls under the control of the general rule that in an action for a nuisance repeated actions may be brought as long as the nuisance continues, or under the exception to that general rule, which is, that for injuries of the character complained of in the declaration the cause of action accrues at once and the whole damage is recoverable in one action. It was plainly the purpose of the rejected plea to put in issue whether or not the structure causing the nuisance complained of in the declaration is permanent

and substantial in character and operates necessarily as an injury to the defendant in error or deprives her permanently of the use of the waters of Hot Springs Run.

The rule, as stated by Wood in his work on Nuisances (3d Ed.), Volume II, section 869, is: "Where the damages are of a permanent character and go to the entire value of the estate affected by the nuisance a recovery may be had of the entire damages in one action, . . . ." and "So, too, when the nuisance is of such a character that its continuance is necessarily an injury and it is of a permanent character, so that it will continue without change from any cause but human labor, it is held that the damage is original, and may be at once fully compensated." In support of the statement of the rule just given the learned author cites and quotes from a long list of authorities.

In *St. Louis, &c., Ry. Co.* v. *Biggs* (Ark.), 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174, the Supreme Court of Arkansas cites a number of authorities for the rule there followed that "Wherever the nuisance is of a permanent character and, its construction and continuance are necessarily an injury the damage is original and may be at once fully compensated. In such cases the statute of limitations begins to run from the construction of the nuisance." In that case, however, the alleged nuisance was constructed in 1873, while the injury complained of was in 1885, and the judgment of the lower court for the plaintiff was affirmed, the case being distinguished from a case falling under the rule just stated by the fact that while the structure (an embankment) was erected by the railway company in 1873, the overflow of plaintiff's land, to recover damages for which he brought his suit, did not occur until 1885; wherefore, the nuisance complained of was not a continuing nuisance from the construction of the embankment to the institution of the suit.

In *Troy* v. *Cheshire* (N. H.), 55 Am. Dec. 187, frequently cited by text-writers and in the adjudicated cases, the prin-

ciples of law applying to such a case are stated as follows: "Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there the damage is an original damage and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong to apply the labor necessary to remove the cause of injury, and can only cause it to be done, if at all, by the expenditure of his own means. But where the continuance of such an act is not necessarily injurious, and where it is necessarily of a permanent character, but may or may not be injurious, or may or may not be continued, there the injury to be compensated in a suit is only the damage that has happened. Thus, the individual who so manages the water he uses for his mills as to wash away the soil of his neighbor is liable at once for all the injury occasioned by its removal, because it is in its nature a permanent injury; but if his works are so constructed that upon the recurrence of a similar freshet the water will probably wash away more of the land, for this there can be no recovery until the damage has actually arisen, because it is yet contingent whether any such damage will ever arise. A person erects a dam upon his own land, which throws back the water upon his neighbor's land. He will be answerable for such damage as he has caused before the date of the writ, and ordinarily for no more, because it is as yet contingent and uncertain whether any further damage will be occasioned or not; because such a dam is not of its own nature and necessarily injurious to the lands above, since that depends more upon the manner in which the dam is used than upon its form. But if such a dam is in its nature of a permanent character, and from its nature must continue permanently to affect the land flowed, then the entire injury is at once occasioned by the wrongful act and may be at once recovered in damages." In that case it was considered that the railroad was in its nature and design a permanent structure,

and the use by it of a portion of the highway was therefore a permanent diversion of the property to that use and a permanent dispossession of the town of it; wherefore, for this permanent injury the town was entitled to recover at once such reasonable damages as it had sustained.

In the case at bar the plea alleges that the sewer system was in its nature, design and use a permanent structure; the declaration alleges an actual physical invasion of plaintiff's property and a complete destruction of all useful qualities of the water by substances from defendant's land; and that the nuisance extends to the entire property of plaintiff, affecting its uses for all purposes for which it had theretofore been used.

In *Platt* v. *Waterburg* (Conn.), 45 Atl. 154, 48 L. R. A. 691, 77 Am. St. Rep. 335, it is said that to turn sewerage into a stream "is in effect an appropriation of the bed of the river as an open sewer, and is an invasion of the property rights of the lower proprietor."

Gould on Waters, section 210, states that rule thus: "The owner of overflowed land may maintain successive actions when, as in the case of destruction of crops from year to year, the wrong does not involve the destruction of the entire estate or its beneficial uses, and the injuries in different years may be included in a single action; but a recovery in a single suit for any unauthorized use of the stream is a bar to a subsequent action. Here, as in the case of a permanent and complete deprivation of the use of the water of the stream, the injury is of a permanent character and goes to the entire value of the estate."

See also 8 Am. & Eng. Encl. Law 684, the article on damages, where the principle is stated as follows: "For a permanent injury to or trespass upon real estate all damages past or prospective are recoverable in one action; and where such damages are recoverable a verdict and judgment will bar a subsequent action for damages from the same injury. Where, however, the injury or trespass is only temporary in character only such

damages are, in general, recoverable as have accrued up to the date of the institution of the action."

In 10 Am. & Eng. Ency. Law (2d ed.) 253, in the article on drains and sewers, it is said: "In an action to recover for an injury to property in consequence of the construction, maintenance or use of sewers, the measure of damages is the loss actually sustained, which in the case of a permanent injury will ordinarily be the diminished value of the property."

In the case of *Paris* v. *Allred* (Tex. Ct. App.), 43 S. W. 62, the action was for damages for a nuisance resulting from the construction and operation of a sewer by the defendant whereby its sewerage was discharged into a branch running through plaintiff's land, rendering the water unfit for use, noxious, unhealthy, and poisoning the air about his dwelling; and the court said: "The main question in the case to be determined is whether or not the cause of the nuisance is permanent in its character and entitled plaintiff to recover all the damages that he has or may sustain in one suit, or whether the nuisance is temporary in its nature and entitles plaintiff to recover only such special damages as may have accrued up to the time of the suit.

"The principle underlying the case of *Rosenthal* v. *Railway Co.* (Tex. Sup.), 15 S. W. 268, is applicable to this case. In that case Justice Gaines, speaking for the court, says: 'When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have occurred only up to the time of the action will be allowed; but if the nuisance is permanent and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation.'

"We think it clear from the evidence in this case that the damages to appellee's land result from a cause permanent in its character. When the sewer—the cause of the injury—was con-

structed it was evidently intended by the city authorities that it should be permanent, and it has been so treated and used ever since.  As long as the sewer is used just so long will the nuisance be constant, continuous and injurious to appellee's land. No move has been made by the city authorities to abate the nuisance, and, the evidence showing the same to be permanent, the appellee is entitled to recover all the damages that have or may accrue by reason of the nuisance."

The case of *Umscheid* v. *City of San Antonio* (Tex. Ct. App.), 69 S. W. 496, was an action to recover damages for injury to a riparian owner, caused by sewerage in a stream. Held: "It was proper to submit to the jury the question whether the injury to plaintiff's lands was temporary or permanent, and if the defendant can show that it can and will discontinue the injury, then it should be held to be temporary and not permanent."

In *Langley* v. *City of Augusta* (Ga.), 45 S. E. 487, the principle is reaffirmed that if the nuisance is of a permanent and continuous character the damages to be recovered are all damages past and future which the maintenance has occasioned and will occasion in the future.

In the case of *Beatrice Gas Co.* v. *Thomas,* 41 Neb. 662, 59 N. W. 925, 43 Am. St. Rep. 711, the nuisance complained of was that the water in plaintiff's well was rendered "unfit for use, dangerous and unwholesome" by reason of filth and waste from defendant's works percolating into it through the soil, and the opinion of the court says: "The general policy of the law is to avoid multiplicity of actions, and, if practicable, without injustice, to afford compensation in one action for all injuries."

In *City of North Vernon* v. *Voegler,* 103 Ind. 314, 2 N. E. 821, the action was to recover damages for grading a street so as to throw water on a lot of the plaintiff, and it was held that all damages must be recovered in one action, citing 3 Sutherland on Damages, 403, where it is said:  "When a wrong is

done which produces an injury which is not only immediate but, from its nature, must necessarily continue to produce loss independent of any subsequent wrongful acts, then all the damages resulting both before and after the commencement of the suit may be estimated and recovered in one action." The opinion by Elliott, J., says: "The improvement of the street was a permanent one, and, as it was permanent, the cause of action was complete when the damage resulted, and the recovery must not be for part of the damages, or for some damages, but for all of the damages resulting from the wrong which constituted the cause of action." See also *Bizer* v. *Ottumwa Hydraulic P. Co.,* 70 Ia. 145, 30 N. W. 172; *Austin, &c., Ry. Co.* v. *Anderson* (Tex.), 15 S. W. 484; 23 Am. St. Rep. 350.

The same rule is applied in actions for damages to real estate from the erection by a city of a pesthouse, which was a nuisance, in its vicinity.

In *City of Paducah* v. *Allen* (Ky.), 63 S. W. 981, it was held that the measure of damages was the depreciation in the market or salable value of the plaintiff's land by reason of the location and maintenance of the pesthouse in its vicinity.

So, in the *Elevated Railroad Cases,* it was held that the damage alleged was not only interference with access by the structure, but an interference with the light, air, ventilation and privacy of the premises by the large number of trains which passed; and that as the damage was of a permanent character and the injury to the plaintiff's property was susceptible of ascertainment when the railroad was completed, the statute of limitations began to run from that time. *De Geofrey* v. *Merchants B. T. R. Co.* (Mo.), 179 Mo. 698, 79 S. W. 386, 101 Am. St. Rep. 524, 64 L. R. A. 959. In the opinion in that case the following rule is quoted with approval: "While there is some conflict between the American cases on this subject, the rule, sustained by the great weight of authority, seems to be that when by wrongful acts a permanent nuisance is created and the injury therefrom is direct, immediate and complete,

so that the damages can be immediately measured in a single action, the statute of limitations will begin to run from the erection of the nuisance."

The same rule is applied where damages to property result from the maintenance and operation of a railroad in a street, by which smoke, cinders, dirt, etc., are thrown on the adjacent premises. *Chicago & E. R. Co.* v. *Loeb* (Ill.), 8 N. E. 460, 59 Am. Rep. 341.

Adverting again to Gould on Waters, where the learned author is still discussing the rule to be applied in a case of a permanent and complete deprivation of the use of the water of a stream, in section 416 it is said: "But the rule as to this class of cases is subject to an important modification where the injury complained of is permanent. In such cases the rule is altered for the sake of convenience and but one action is allowed. The plaintiff is required to recover in one suit the entire damages, present and prospective, caused by the defendant's act. Injuries caused by permanent structures infringing upon the plaintiff's rights in his land, such as railroad embankments, culverts and bridges, dams, and permanent pollutions of water, fall in this class." See also *Fowle* v. *New Haven, &c., Co.,* 107 Mass. 352; *E. L. & B. S. Co.* v. *Comb* (Ky.), 19 Am. Rep. 67; *Powers* v. *Council Bluffs* (Iowa), 24 Am. Rep. 792.

It is argued for defendant in error that to apply the rule contended for by plaintiff in error, by which this action would be barred in five years, would be unreasonable, in that it would require one whose property had been damaged by the alleged nuisance to find out within five years from the beginning of the injury whether it would be continuous. The trouble with this contention is that the declaration alleges that the injury has completely destroyed the water of the stream and the comfort of defendant in error's home, and has continued "from thence hitherto and thereby during all the time aforesaid"— that is, from the time the nuisance was created down to the institution of the suit. The rule of law cannot be changed

merely because the plaintiff in such an action has failed to discover not only the character of the injury, but its cause, in time to bring an action for damages.

The question presented by the rejected plea is simply whether the injury is of a permanent character, resulting from a permanent structure, and is a mere question of fact, which, like all other alleged facts, can be submitted to and decided by a jury. The intention of the defendant in such a case is to be determined in the same way as it is to be determined in other cases, and there is no difficulty in determining it from the defendant's acts and the nature and purpose of the structure which caused the injury.

But the further contention is made for defendant in error that the application of the principle of law under consideration would also be unreasonable, because it would be equivalent to saying that if the right of action was barred in five years the court would be deciding that the defendant could keep up its sewer and continue the pollution of the stream.

No distinction is made in the authorities in the application of the rule in connection with corporations having the power of eminent domain and cases arising where the injury complained of was not caused by the exercise of that power. It would seem, however, that the fact that the injury was caused by the exercise of the power of eminent domain has been considered of no importance, except for the purpose of showing that the structure was permanent in character.

While the great weight of authority sustains the principle invoked by the rejected plea there are cases which take the opposite view, and this seems to be true of the courts of New York; but in *N. Y. Erie R. Co.* v. *Fifth National Bank,* 135 U. S. 432, 34 L. Ed. 231, 10 Sup. Ct. 743, the opinion by Mr. Justice Gray, after stating that the rule prevailing in New York which allowed repeated actions for continuing injuries has not prevailed in analogous cases in other jurisdictions, calls attention to the fact that even in a New York case it was ob-

served that "it might be productive of less inconvenience on the whole if an opposite rule prevailed."

Referring to the New York rule the Supreme Court of Alabama, in *Highland* v. *Mathews,* 99 Ala. 24, 10 South. 267, 14 L. R. A. 464, says: "There are evidences in the later New York cases that that court has not remained satisfied with the decision in the Uline case. The inconveniences which have been developed in the attempts to adhere to that ruling have, however, been obviated in a great measure by encouraging such shifts as permitting damages for permanent injury to property to be assessed in such cases if the defendant failed to invoke the benefit of the decision against the propriety of this course, thus allowing the rule as to the measure of damages to be determined by the acquiescence of the parties rather than by the law, by allowing a judgment for past loss of rentals, and in the same case granting an injunction restraining the further operation and maintenance of the road unless the defendant paid a certain sum equal to the depreciation in value of the property, as for a permanent appropriation. *Pond* v. *Metropolitan Elev. R. Co.,* 112 N. Y. 186, 19 N. E. 487, 8 Am. St. Rep. 734; 3 Sedg. Dam. (8th Ed.) 465, 476, where there is a review and criticism of the New York cases." Nothing is said, however, in the opinion just referred to as to how the shifts mentioned would affect the statute of limitations.

Defendant in error relies greatly upon the case of *Southside Ry. Co.* v. *Daniel,* 20 Gratt. 344; but we are unable to see that the decision in that case is helpful to the view contended for by the learned counsel. In that case the railroad company erected an embankment and other structures across the land of the plaintiff without leaving sufficient arches or waterway to allow the flood waters of Buffalo run to escape, as they had been accustomed. No immediate damage to the land of plaintiff flowed from the erection of the embankment, but some years afterwards, by reason of the stream becoming flooded by an unusual rainfall, the waters accumulated in great quantity

upon his land, injuring the same, and for that injury he brought an action to recover damages. In the opinion by Staples, J., it is said: "The rule undoubtedly is that where a wrong or a contract is entire, and might be the subject of a single suit, the law will not permit it to be divided and made the subject of several suits." And further, that "Where the act is unlawful in itself, a right of action accrues immediately, and is held to include all subsequent damage flowing from it. In such cases there can be but one recovery between the parties, as the injury is not the cause of the action. Where, however, the act is lawful in itself, but negligently and improperly performed, the gist of the action is the damage, without which there can be no recovery."

In that case the distinction is clearly drawn between a case where the injury flows immediately from a wrongful act and where such is not the case and the jury would be left to speculate whether any damage is likely to arise. In that connection *Bonomi* v. *Backhouse,* 96 Eng. C. L. 622, is cited, in which it was held that no cause of action accrued for the mere excavation by the defendant on his own land, so long as it caused no damage to the plaintiff's. Continuing, Staples, J., says: "The injustice of a contrary rule is made manifest by a single illustration. A railway company having constructed a defective culvert or other structure ascertains that the land of the adjoining proprietor will be flooded and injured, and immediately remedies the defect by a proper culvert, so that no damage to the land can ever occur." Although the recovery in that case was sustained, the opinion sanctions the rule that if a right of action accrues as soon as the work is defectively done, and the landowner fails to sue within five years thereafter, his action is barred, though his property should be rendered utterly valueless within the five years.

In the case at bar both the declaration and plea set forth that the structure of plaintiff in error was of a permanent character, and from its construction the pollution of the Hot Springs Run,

of which the defendant in error complains, then began and has continued "from thence hitherto and thereby during all the time aforesaid"—that is, during the statutory period.

The case of *Doran* v. *City of Seattle,* 24 Wash. 182, 64 Pac. 230, 85 Am. St. Rep. 948, 54 L. R. A. 552, is also relied on for defendant in error, but that case merely holds that if the act complained of was wrongful in its inception the continuance thereof for any length of time would not make the act lawful as against the owner of the property.

Statutes of limitation are statutes of repose, operating to bar the right of action and not to transfer any right. Whatever right the defendant in error had she still possesses, the right being in no wise extinguished; but if she has failed to bring her action on account of the nuisance complained of within the time limit of the statute she has but lost the right of action. We are of opinion, therefore, that the plea should not have been rejected.

The sixth instruction asked by plaintiff in error was intended to present for consideration the same issue tendered by the rejected plea, which instruction was refused; and this ruling of the court is assigned as error.

If follows from what we have already said that it was error to refuse the sixth instruction.

The purpose of plaintiff in error's plea No. 3, which the court rejected, was to put in issue whether or not the defendant in error was estopped by her conduct and acquiescence in the construction of the sewer complained of and the pollution of the stream flowing therefrom to bring this action; but the plea fails to allege any duty on the part of the defendant in error to have interposed objection to the improvements being made by plaintiff in error on its property, including the sewer in question, and therefore we do not think that the court erred in rejecting the plea.

The third assignment of error relates to the manner in which the jury that tried the case was selected and empaneled; but

as that ground of complaint is not likely to arise at another trial of the case it is not necessary to consider this assignment.

Nor do we deem it necessary to consider the fourth assignment of error, which refers to the refusal to give the instructions asked for by plaintiff in error and the giving of certain instructions of the court and certain instructions asked for by defendant in error. It is not probable that the same state of facts upon which the case was submitted to the jury at the last trial will be brought out by the evidence at another trial, since with the admission of the rejected plea of the bar of the statute of limitations the issues to be tried will be different.

The remaining assignment of error relates to the refusal of the court to set aside the verdict as contrary to the law and the evidence. As the case has to be remanded for a new trial we consider it inexpedient to discuss the evidence introduced at the last trial.

For the foregoing reasons the judgment of the Circuit Court will be reversed and annulled, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

<em>Reversed.</em>