# Richmond.

VIRGINIAN RAILWAY CO. v. JEFFRIES' ADMINISTRATOR.

November 18, 1909.

Absent, Buchanan, J.

1. INSTRUCTIONS—*Jury Sufficiently Instructed.*—It is not error to refuse to give further instructions to a jury who have already been fully and fairly instructed.

2. NUISANCE—*Recurrent Injuries—Case at Bar.*—If an embankment of a railroad built partially into the bed of a river injures a sand bank on the opposite shore only at times of high water, then the erection of the embankment is not the direct cause of the injury, and no action lies in favor of the owner of the sand bank until some actual injury is suffered by him, in consequence of the action of the water in the river.

3. NUISANCE—*Continuous and Permanent Injuries—Recurrent Injuries.* Where the damages resulting from an act lawful in itself are of such a nature that they are continuous and permanent, then all the damages from such nuisance must be recovered at one time and in one action, but when they are of such nature that it cannot be told whether or not they will continue, or what damage will result in the future, though the act which causes the damage is continuing and permanent, successive actions must be brought for the subsequent damage.

4. NUISANCE—*Right of Action—Purchaser in Possession—Acts of Wrongdoer—Possession as Title.*—A purchaser of land in possession may maintain an action to recover damages for a nuisance committed thereon although his contract of purchase is not enforceable in a court of equity. Such infirmity cannot be taken advantage of by a wrongdoer who was not a party to the contract nor concerned in its validity. Furthermore, possession alone is sufficient title in such case to maintain the action.

5. WITNESSES—*Refreshing Memory—Unenforceable Contract—Best Evidence of Date.*—Where it is material to show the date of the sale and delivery of possession of real estate in an action by the purchaser against a wrongdoer, the contract of sale, though unenforceable in equity, is admissible in evidence as a memorandum to refresh the memory of the vendor who is ex-

amined as a witness on behalf of such purchaser, and also as the best evidence of such date.

6. TRESPASS—*Right of Action—Equitable Owner in Possession.*—The owner of an equitable estate who is in possession may recover for damages to realty, and a judgment against such party in possession is *res judicata* as against the holder of the legal title.

7. TRESPASS—*Right of Action—Unenforceable Contract Executed.* Where a contract for the sale of land which did not comply with the statute of frauds has been subsequently executed, a purchaser in possession at and after the date of the contract, may recover for the damages done to the land from and after such date.

8. STATUTE OF FRAUDS—*Consideration.*—The statute of frauds of this State does not require that the consideration for a contract for sale of real estate shall be stated in the writing, but expressly provides that it may be proved by evidence *aliunde.*

9. EXCESSIVE VERDICTS—*Case at Bar.*—The evidence in the case at bar is not such as would warrant the court in setting aside the verdict as excessive.

Error to a judgment of the Circuit Court of the city of Roanoke in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robertson, Hall; Woods & Jackson,* for the plaintiff in error.

*Poindexter & Hopwood* and *A. P. Staples, Jr.,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

On January 1, 1906, and for some time theretofore, G. J. Persinger was the owner of a certain sand bank on the southern side of the Roanoke river, in Roanoke county, near what was known as the "Buzzard's Rock Ford," about one mile southeast of Roanoke city, and about the date named he leased the sand bank for a period of one year at a rental of $120 to one C. W. Hancock, who after operating the bank for about six months

sold his lease at a profit of about $40 to one E. F. Jeffries. Jeffries was at that time the owner of a nearby plant for the manufacture of cement blocks, or artificial cement stone, and, finding the sand obtained from this bank of a very fine quality and valuable for use in this business, on May 31, 1906, he bought the sand bank from Persinger, at a cost of $1,200, for which sale there was a written memorandum signed by Persinger, which is made a part of this record; and subsequently Jeffries also bought from Persinger another strip of land adjacent to the sand bank and to be used in connection therewith, at an additional cost of $200. These two pieces of property were conveyed by Persinger to Jeffries by deed duly executed and delivered January 2, 1907, and Jeffries continued to operate the sand bank until the time of his death, and after his death the same was operated for only a short while by members of his family.

In the construction of its railroad along the north bank of Roanoke river, in Roanoke county, at the point known as "Buzzard's Rock Ford," the Virginian Railway Company found it necessary to extend a fill or embankment partially into the channel of Roanoke river, the channel being forced to the south. This construction work was commenced about February 1, 1906, the contract being let to D. A. Langhorne & Company, Inc., which company sublet a portion of the work, including that portion at or near "Buzzard's Rock Ford," to Bowman & Jamison, and the latter entirely completed their contract on September 15, 1906. It seems, however, that the portion of the fill or embankment which extends into the natural channel of Roanoke river was completed to within one and one-half feet of the grade of the railroad in April, 1906, and the grade of the railroad is located about four feet above the ordinary high water mark. At this point there is a sharp bend in the river, and in high water sand is deposited on the south bank, and for many years Persinger had been using this portion of his land by making sale of the sand deposited thereon for commercial purposes,

and leasing the same, as above stated, to one Hancock, who assigned his lease to Jeffries.

Jeffries having died, E. W. Poindexter qualified as his administrator, and instituted this suit against the Virginian Railway Company and D. A. Langhorne & Company, Inc., to recover damages for the alleged destruction of the said sand bank by reason of the construction of the fill or embankment before mentioned so as to change the natural channel of Roanoke river; and upon the trial of the cause there was a verdict in favor of the plaintiff against the Virginian Railway Company for $1,000, which the circuit court refused to set aside, and entered judgment thereon, to which this writ of error was awarded.

Omitting the formal parts of the declaration filed by the defendant in error, the first count alleges that plaintiff in error constructed its embankment partially across and into the natural channel of Roanoke river; that the waters of the river were, by means thereof, diverted over and upon the land owned by plaintiff's intestate, to the complete and utter destruction thereof as a sand bank for commercial and all other purposes. The second count alleges that by reason of the diversion of the waters in Roanoke river the natural and usual deposit of sand therefrom was interrupted, disturbed and terminated, to the complete and utter destruction of the property as a sand bank or a depository for sand, and for any and all purposes whatsoever.

The first assignment of error relied on for a reversal of the judgment is the refusal of the trial court to instruct the jury that if the injury complained of was of a permanent nature and was committed before the defendant in error's intestate acquired the property in question, the plaintiff could not recover in this action.

The contention of plaintiff in error is that, if the injury complained of in this case is of a permanent and continuing nature for which the whole damages should be recovered in one action, the owner of the land at the time the injury was committed should have sued for the damages sustained.

The second assignment of error, which may be considered

along with the first, is rested upon the contention that if the injury complained of was not of a permanent character—that is, was not an original damage—the court erred in instructing the jury that the plaintiff could recover the amount that the fair cash value of the sand bank had been diminished by reason of the diversion of the waters of Roanoke river; in other words, the contention of plaintiff in error is, that in instructing the jury the court adopted inconsistent theories.

There can be no question that if the building of the embankment was the immediate cause of the injury to the owner of the sand bank on the opposite side of the stream, the cause of action arose in his favor; in other words, if the damage arose by reason of the construction of the embankment in Roanoke river, and was of a continuing nature, the cause of action arose to the owner of the sand bank thereby injured, and a recovery of damages could only be had by him.

Plaintiff in error sought to have the jury instructed as follows:

1. "The court instructs the jury that the burden is on the plaintiff in this case to establish by a preponderance of the evidence that the land mentioned in the declaration has been actually damaged, the extent of such damages, and that he has a right to recover the damages proved against the defendants or one of them. In order to render a verdict for the plaintiff in this case for any amount the jury must be satisfied from a preponderance of the testimony that the land mentioned in the declaration has been rendered less valuable by the alleged change in the channel of Roanoke river, and that the change in the channel of said river, which has resulted in the injury to said land, was made by the defendants while the plaintiff's intestate was the owner of said land.

2. "The court instructs the jury that if they believe from the evidence that the fill or embankment constructed by the defendant is a permanent structure, and that the said fill or embankment is constructed partially across and into the natural channel of Roanoke river so as to change the natural channel of said

river and divert the waters of said river across, over and upon the land in the declaration mentioned, and that the said fill or embankment was so constructed before the plaintiff's intestate became the owner of the said land, then the plaintiff cannot recover in this action, and they must find for the defendant."

The real purpose of these instructions, which were refused, was to submit to the jury the question, who was the owner of the sand bank at the time that the damages alleged to have been sustained by it actually occurred?

We are of opinion that the court did not err in refusing plaintiff in error's instructions 1 and 2, for the reason that the case, upon the evidence which had been introduced, was fairly covered by the instructions which the court gave.

The instructions given told the jury, first, that if they believed from the evidence that the defendant railway company constructed its embankment into the natural channel of Roanoke river, and that if such construction diverted the waters of the river from their natural channel on and upon the sand bank belonging to the plaintiff's intestate, E. F. Jeffries, they should find for the plaintiff and against the railway company, and assess the damages at such sum as they might believe from the evidence that the fair cash value of the sand bank had been diminished by reason of the diversion of the waters, caused by the erection of the embankment in Roanoke river; second, that if the jury believed from the evidence that the value of the sand bank in question had been diminished by reason of the diversion of the waters of Roanoke river by the embankment, they should, in arriving at the plaintiffs' damages, take into consideration the value of the sand bank for supplying sand for commercial purposes, and in this connection should consider any decrease, either in quantity or quality, of the sand available for commercial purposes which the jury might believe from the evidence had been caused by the diversion of the waters by the embankment; and, third, that the burden was on the plaintiff in the cause to establish by a preponderance of evidence that

the land mentioned in the declaration had been actually damaged, the extent of such damages, and that he had a right to recover the damages proved against the defendants, or any one of them.

The evidence tended to prove, beyond question, that the building of the embankment complained of was the cause of the diversion of the waters of Roanoke river from their original flow over and against the sand bank which is alleged to have been injured, and that no injury to the sand bank had been sustained merely from the construction of the embankment, but occurred subsequent thereto by reason of floods in the river. Therefore the case comes completely under the ruling of this court in the case of *Southside Railroad Co.* v. *Daniels,* 20 Gratt., 344, cited with approval in *Virginia Hot Springs Company* v. *McCray,* 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465.

No injury having occurred to the sand bank directly from the erection of the embankment by the railway company, which was a lawful act, no suit could have been maintained until some actual injury was caused to the plaintiff's intestate by the action of the water in the river.

In the case of *Southside Railroad Company* v. *Daniels, supra,* it was held, in conformity to the great weight of authority, that where the damages resulting from an act lawful in itself are of such a nature that they are continuous and permanent, then all the damages from such nuisance must be recovered at one time and in one action, but when the damages are of such a nature that it cannot be foretold whether or not such damages will continue or what damage will result in the future, though the act which causes the damage is continuing and permanent, successive actions must be brought to recover for the subsequent damage. In other words, in cases where the act itself is lawful, whether or not the injury is original and permanent is to be determined from the nature of the damage; and this being the case the cause of action accrues at the time the first damage is sustained; for as the nature of the damage determines the char-

acter of action to be brought to recover therefor, there can be no right of action until there is damage, and the defendant becomes liable for damages resulting from an act lawfully done from the date the first damage is sustained, whether the damage be permanent or temporary in its nature.

It was not seriously contested in this case that the sand bank in question was damaged—in fact, practically destroyed—as the result of the diversion of the waters of Roanoke river over and upon the sand bank in cases of high water or flood in the river, and the question seriously contested was: Who was the owner of the sand bank at the time the first injury thereto was sustained? And that question was fairly submitted to the jury in that part of the court's instructions which told them that the burden was on the plaintiff to establish by a preponderance of the evidence that the land mentioned in the declaration (that is, the sand bank) had been actually damaged, the extent of such damage, and that the plaintiff had a right to recover the damages proved against the defendants—that is, the jury were told that they must be satisfied by a preponderance of the evidence that the plaintiff's intestate, E. F. Jeffries, was the owner of the sand bank at the time the injury thereto was sustained.

There can be no doubt that the evidence tended to prove that whatever change there was in the channel of the river took place as soon as the embankment was built by the railway company, and that so far as it interfered with the natural channel of the river the embankment was completed prior to May 31, 1906; and that at that time the plaintiff's intestate was in the possession of and operating the sand bank for the use of the sand by himself or sale to others for commercial purposes.

But it is earnestly contended on behalf of the railway company that the plaintiff's intestate was not such owner of the sand bank as entitled him to recover damages for injury thereto until the execution and delivery to him of the deed of conveyance of January 2, 1907; and that the injury complained of having occurred prior to that time, he cannot maintain this action.

This presents for consideration the third assignment of error, to the ruling of the trial court in admitting in evidence the contract of May 31, 1906, and in refusing to instruct the jury that this contract did not authorize the recovery of damages for injuries committed subsequent to the execution of the contract.

We are of opinion that there is no merit in this assignment of error. The ground of objection to the introduction of this contract was, that it was not such a contract as a court of equity would enforce, for the reason that it was not a valid and binding contract on anyone; but it seems clear from the authorities that if it were not a contract enforceable in a court of equity as being binding upon the parties thereto, such infirmity cannot be taken advantage of by a wrongdoer who was not a party to the contract or concerned in its validity or non-validity. If for no other reason the contract of May 31, 1906, was admissible in evidence as a memorandum to refresh the memory of the witness Persinger as to the date the plaintiff's intestate, Jeffries, took possession of the sand bank under the contract of purchase. 1 Greenleaf on Ev. (16th ed.), sec. 439-c. The time of this sale was a fact sought to be established at the trial, and the witness had stated that he could not remember the date exactly, but the written contract would show it, and for that purpose the contract was produced and offered in evidence, and as the best evidence of the date of the sale and delivery of possession of the sand bank by Persinger to the plaintiff's intestate, and it served also to show the character of the possession.

In *Wilson* v. *Phoenix Powder Mfg. Co.,* 40 W. Va. 413, 21 S. E., 1035, 52 Am. St. Rep. 890, the action was to recover for injuries done to realty by an explosion of powder stored in a neighboring building, and the question raised was the right of the plaintiff to maintain the action: Held, that as against a wrongdoer possession alone was sufficient evidence of title to maintain the action, the court saying: The plaintiff "could maintain his action, as he was in actual possession, which is one of the first elements of title, as it is *prima facie* evidence of full legal title

in him who has it." See also 1 Lomax Dig., 574; 2 Min. Inst. 447; 2 Bl. Com. 596.

In a still later case, decided by the Supreme Court of West Virginia, *Clay* v. *City of St. Albans,* 43 W. Va., 539, 27 S.. E., 368, 64 Am. St. Rep. 883, the plaintiff sued for damages done to his real estate from surface water diverted on his lands by the defendant, and the question of the right of the plaintiff to bring the action having been raised, the court held that possession alone was sufficient to maintain the action, and that his averment of possession in the declaration was good on demurrer. Steph. Pl. 287; 1 Perry on Trusts, sec. 328; *McKinzie* v. *Railroad Company,* 27 W. Va. 306, sustain the proposition that the owner of an equitable estate who is in possession may recover for damages to the realty, and that a judgment against such party in possession is *res judicata* as against the holder of the legal title. See also *Curtis* v. *Hoyt,* 19 Conn. 154, 48 Am. Dec. 149; *Carney* v. *Reed,* 11 Ind., 417.

In the case here the evidence showed that Persinger, the party to be charged by the contract of May 31, 1906, recognized the validity of the same and executed his deed in pursuance thereof; and as held by this court in *Wheeling Ins. Co.* v. *Morison,* 11 Leigh, 378, 36 Am. Dec. 385, a parol contract is not void by the statute of frauds, though its obligation may be repelled by the party sought to be bound by it. "The protection is introduced for his benefit by the statute, and may, of course, be renounced by him. If he is willing to abide by it; if disdaining the *mala fides* of breaking his plighted faith, merely because the ceremonies of the law have been neglected, he recognizes the contract and confesses its obligation, shall it not be enforced? Let the unvarying course of equity cases answer the question. How, then, can it be objected by a third person, that the contract which the party himself acknowledges and claims to be valid and binding upon him, is not to be so considered?" See *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875.

*McMullin's Admr.* v. *Saunders,* 79 Va., 362, is conclusive au-

thority for the proposition that when Persinger delivered to Jeffries the deed of conveyance for the property mentioned in the contract of May 31, 1906, in pursuance of that contract, the statute of frauds would have no effect upon the validity of the contract. Said the court in the case cited: "Even as to those executory contracts which are within the statute, it is now well settled that when they have been fully executed the statute has no power over them and no effect upon the rights, duties and obligations of the parties."

The contract here in question having been executed, the right existed in the plaintiff's intestate, Jeffries, from and after May 31, 1906, to maintain this action, and as to when the damage to the sand bank was sustained was a question for the jury upon all the evidence in the case.

The further contention made on behalf of the railway company that the contract of May 31, 1906, was not enforceable because it fails to state the consideration and terms of payment, and because the contract does not show that the parties had agreed upon the terms of payment, is without merit. In the first place section 2840 of the Code expressly provides that the writing need not set forth the consideration, but that this may be proved by evidence *aliunde;* and, secondly, Persinger testified on behalf of the plaintiff that he entered into the contract with Jeffries, and stated the consideration therefor, viz., $1,200 for the sand bank, and $200 for a parcel of land adjacent thereto, which consideration he had received, and further stated that the embankment was constructed by the railway company after he sold the sand bank to Jeffries, and the witness was not even cross-examined as to this statement. Furthermore, an endorsement on the contract made by Persinger showed that the parties had agreed on the terms of payment, and that the cash payment was to be made on January 1, 1907, and bonds for the residue were to be executed at that time.

It appears also from the record that it is immaterial whether the contract of May 31, 1906, was binding upon the parties, as it

does not appear that any damage was done to the sand bank, or that any cause of action arose in that regard, prior to the execution of the deed by Persinger to Jeffries on January 2, 1907.

The fourth and last assignment of error is that the court erred in refusing to set aside the verdict, because the damages awarded were excessive; and we are of opinion that this assignment is also without merit.

Persinger testified in effect that the sand bank, prior to the injury complained of by the plaintiff, as resulting from the embankment built in the river, was worth $2,400 or $2,500, and that at the time of the trial it was worth less than one-half of what it was before; that he foresaw that the sand bank would be injured by the building of the embankment, and served notice on the company that he would hold it liable for damages incurred by reason thereof, and soon afterwards he sold the bank to Jeffries for about one-half of its value; that at the time he sold to Jeffries the sand bank was bringing a rental of $120 a year, which is 6 *per cent.* interest on $2,000; that the sand bank had yielded from $8 to $15 a month for the last three years he (Persinger) owned it; and that the supply of sand there was practically inexhaustible. It is further shown in the evidence that Jeffries considered the rental value even greater than $120 per year, as he bought six months of Hancock's lease at $100, or at the rate of $200 a year, which was an indication that the sand was worth even more than the valuation put upon it by Persinger. It is further shown that at the time of the trial of the case more than one-half of the sand bank had been submerged or washed away, and that the quality of the sand left was so poor and contained so much gravel that it was practically valueless for commercial purposes, and that since the death of plaintiff's intestate, which occurred six months prior to the trial, the proceeds of the sale of sand from the bank had not been as much as $10. It was further contended on behalf of the railway company that the backwater from the dam constructed several miles below on the Roanoke river was also one of the causes of injury to the sand bank; but as two of its own witnesses testified that

the backwater benefited rather than injured the sand bank, the jury were warranted in the conclusion that the injury resulted in consequence of the erection of the embankment in the river.

It further appears that the jury viewed the premises in question in the presence of the judge of the court and counsel, and further that the additional strip of land bought at the price of $200 to be used in connection with this sand bank, has, by reason of the destruction of the sand bank, been rendered practically valueless to the estate of plaintiff's intestate.

In view of these facts we would not be warranted in holding that the damages assessed by the jury are excessive.

For the foregoing reasons the judgment of the circuit court must be affirmed.

*Affirmed.*