# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SOUTHERN RAILWAY COMPANY V. A. D. WATTS.

November 16, 1922.

1. FORMER ADJUDICATION OR RES ADJUDICATA—*Question not at Issue—Waters and Watercourses—Limitation of Actions—Time at which Damage to Land Resulted from Diversion of Stream.*—In an action by a landowner to recover entire damages to a tract of land caused by the diversion of a stream of water, defendant pleaded the statute of limitations, and it was important to determine at just what time damage to the land by the diversion of the stream began. The land had been sold at judicial sale, and the report of the commissioner stated that the diversion of the stream had already caused some damage, and the decree confirming the sale recited that the diversion had probably caused some damage.

   *Held:* That these records did not establish as a fact any actual damage to the land before the sale, as that question was not an issue in the suit in which the sale was made.

2. WATERS AND WATERCOURSES—*Limitation of Actions—Time at which Damage to Land Resulted from Diversion of Stream—Question for Jury.*—In an action by a landowner to recover entire damages to a tract of land caused by the diversion of a stream of water, defendant pleaded the statute of limitations. The evidence left in some doubt the question as to when the first actual damage resulted to the land from the diversion, and the question consequently was one for the jury to determine, and their verdict in favor of plaintiff settled the question that the actual damage did not commence more than five years before the institution of the suit.

3. LIMITATION OF ACTIONS—*Waters and Watercourses—Time at which Damage to Land Resulted from Diversion of Stream—Division of Land.*—In an action by a landowner to recover entire damages to a tract of land caused by the diversion of a stream of water, defendant pleaded the statute of limitations. The tract in question had formed part of a larger tract.

   *Held:* That if the injury to the land developed before the division, the right of action was entire, and the statute began to run at once as to the whole boundary, and its running was not suspended or affected by a subsequent division of the land into parcels.

4. LIMITATION OF ACTIONS—*Burden of Proof.*—The burden of proving the

Syllabus.

facts necessary to establish the application of the statute of limitations is on the defendant.

5. WATERS AND WATERCOURSES—*Limitation of Actions—Time at which Damage to Land Resulted from Diversion of Stream—Liberal Construction—Case at Bar.*—In an action by a landowner to recover entire damages to a tract of land caused by the diversion of a stream of water, defendant pleaded the statute of limitations. The limitation in such cases is five years, and the decisive question in the instant case was whether the cause of action arose within that period. Since the damage was unquestionably caused by a permanent work of railway construction, the final question was, did the statute begin to run as soon as the work was completed, or did it only begin to run from the time of the first injury to the land from such work.

*Held:* That the cause of action accrued, and the statute therefore began to run, at the time the damage commenced and not at the time when the construction was completed.

6. NEGLIGENCE—*Lawful Act Negligently Performed—Gist of the Action is the Damage—Diversion of Watercourse—Case at Bar.*—Where an act is lawful in itself, but negligently and improperly performed, the gist of the action is the damage, without which there can be no recovery. In the instant case, an action against a railroad for damage to land from the diversion and retarding the flow of a stream, the work was confined to defendant's premises, and was entirely lawful. The work, therefore, could not in itself give rise to a cause of action. It was negligently and inadequately done, and ultimately damaged the plaintiff, but the damage and not the act gave the plaintiff a right to sue.

7. WATERS AND WATERCOURSES—*Limitation of Actions—When Statute Begins to Run Against Landowner's Right of Action for Unlawfully Flooding his Lands.*—The statute of limitations does not begin to run against a landowner's right of action for the unlawful flowage of his land until he has been injured, and his action has accrued, notwithstanding the negligent structure and other acts causing the overflow may have been growing and working for a length of time beyond the period of limitation. If a structure, when completed, is permanent in character, but not necessarily a nuisance, and afterwards becomes one, the statute begins to run from the time an injury is received, and not from the time the structure is erected.

8. WATERS AND WATERCOURSES—*Damages for Flooding Land—Excessive Damages—Case at Bar.*—In the instant case, an action for flooding plaintiff's lands, the jury found a verdict for plaintiff for $1,430.00. The land in question, consisting of twenty-eight acres, before it had suffered material damage from the diversion of the water, had been sold for $1,600.00, and before that for $1,230.00. But there was direct and credible testimony that the actual value of the damaged land

had been as much as $300.00 per acre, and that its value at the time the suit was brought had been reduced to less than $10.00 an acre. *Held:* That the verdict of the jury could not be interfered with.

9. WITNESSES—*Examination—Leading Questions—Appeal and Error.*— Where questions complained of as leading were objectionable on that ground, but the objection was not made until after a number of them had been answered, and, moreover, the answers thereto were merely cumulative of other evidence in the case to which there was and could have been no objection, such leading questions are not ground for reversal.

10. HEARSAY EVIDENCE—*Appeal and Error—Prejudice to Appellant.*—So-called hearsay evidence, which could not have prejudiced the appellant, is not ground for reversal.

Error to a judgment of the Circuit Court of Amherst county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. T. Coleman, Jr.,* for the plaintiff in error.

*Volney E. Howard* and *Wm Kinckle Allen,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This action was brought by A. D. Watts against the Southern Railway Company to recover entire damages to a tract of land caused by changing the channel and retarding the flow of a natural stream of water which runs through the land. There was a verdict and judgment below in favor of the plaintiff, and the defendant assigns error. The parties to this writ of error will be designated as plaintiff and defendant, in accordance with their respective positions in the lower court.

The land here involved was formerly a part of a larger tract owned by A. L. Huntt. After his death a suit was brought to sell his real estate, and the land in

question, being one of several tracts into which the Huntt land was divided for the purposes of the sale, was sold to Mary O. Beard on July 14, 1915, by A. F. Huntt, commissioner. On July 13, 1917, Mary O. Beard received a deed for the land from J. Jordan Leake, commissioner, and on September 16, 1920, she sold and conveyed the same to the plaintiff, A. D. Watts. The Huntt land adjoined on the north the right of way of the defendant, and was traversed by a creek which, after leaving the land, formerly ran under the railway tracks which passed over it on a trestle. In the year 1914, the railway company, in connection with the double-tracking of its road, converted the trestle into a fill, and diverted the creek at that point into a new channel along and upon its right of way on the north, all these changes being made on its own property. Within a short time after this change in the construction of the railroad and the accompanying change in the channel and course of the creek—just how soon does not appear—the bed of the creek at and above the point of diversion began to fill up with deposits of sand and dirt, and gradually extended back up the stream, resulting finally in the damage to the Watts tract for which this suit was brought. About six and a half acres of that tract is flat bottom land, and the specific complaint made and proved is that this part of the property has been rendered swampy and practically valueless.

As indicated above, commissioner Huntt sold the original Huntt tract in smaller parcels, and one of these, known in the record as the Leake land, lies below the Watts land, that is, between the Watts land and the point at which the creek was diverted in 1914, so that the creek runs through the Watts land, then through the Leake land, and thence into the new channel on the railroad right of way.

When the commissioner sold these several parcels of the Huntt land in July, 1915, he made a report of the sales to the court, and in that report he said: "When the Southern Railway recently double-tracked its right of way adjacent to said farm it diverted the waters of Rutledge creek, causing some damage to the bottom lands of said farm, being sections one, two, three and four shown on said plat. Attention was called to this fact at the sale, and after consultation with some of the parties interested, your commissioner announced that these four sections would be sold in their damaged condition, and that the purchasers thereof would also acquire any claim and right of action of the present owners, the parties to this suit, against said railway for damages arising as aforesaid, and that proper assignments and transfers of such claims would be made to the purchasers, such assignments to be without recourse against the estate of A. L. Huntt, deceased."

Section No. 2 referred to in the above mentioned report was the land sold by the commissioner to Mary O. Beard, and is now the Watts land. This report, which was dated September 10, 1915, was confirmed by a decree of September 24, 1915, and that decree contained this provision: "And it also appears that the Southern Railway Company has by the diversion of the waters of Rutledge creek * * * probably caused damage to sections 1, 2, 3 and 4, and that the purchasers should, upon compliance with the terms of their respective purchases, acquire any and all right of action the parties to this suit might have against said Southern Railway for such damage, the court doth adjudge, order and decree that Mary O. Beard, the purchaser of said section 2, shall as a part of her purchase acquire any and all right and claims of the parties to this suit against the said Southern Railway to institute an action for and to

recover damages arising from injury to    *    *    section 2 caused by the diversion of the waters of Rutledge creek as aforesaid."

The deed from Leake, commissioner, to Mary O. Beard, and the deed from Mary O. Beard to A. D. Watts, each purported to pass to the grantees therein such right of action against the railway company as was described in the above recited terms and provisions of the report and decree.

[1] It will be observed that the report of commissioner Huntt stated that the diversion of the stream had already caused "some damage" to sections 1, 2, 3 and 4; that the decree confirming the sales recited that such diversion had "probably caused damage thereto;" and that the decree and the deeds above mentioned passed to Beard and Watts successively such right of action on that account as belonged to the former owners of the land at the time of the sale. None of these records, however, establishes as a fact any actual damage to the land, or any part thereof, before the division and sale. That question was not an issue in the suit in which the sales were made, and was open to inquiry in the trial of this case.

[2] Whether any actual damage had resulted from the diversion of the stream to any part of the Huntt land prior to the sales is a question which the evidence leaves in doubt. One of the plaintiff's witnesses said that within a month after the water was turned into the new channel, following a heavy rain, the whole of what is now the Watts bottom land was covered with water because the new outlet was too small to carry it off; but he added that no injury resulted therefrom, and that he never noticed any injury to any part of either the Leake or Watts land until two or three years later. Certain other witnesses for the plaintiff said that the creek bed

began to fill up from the lower end in 1915, but it is not clear that they meant to fix the time prior to the sale in 1915, and not clear that they meant to say that the deposits in the bed of the stream at that time had extended further than the right of way of the railway company.   The witness who spoke most positively on the subject, and who had the most intimate knowledge of the whole situation, was George B. Rhea.   He lived on the land for many years prior to the sale, was living there when the sale was made, and saw the property almost daily for some years thereafter.   He testified that he told the owners as soon as the change was made that the bottom land would be ruined, but his testimony does not, as a whole, seem to mean that he ever saw or intended to state that any actual damage accrued prior to the sale, or prior to the year 1916.   His warning to the former owners seems to have referred not to a present but to a prospective damage.   He testified that the creek began to fill up down at the lower end of the Leake land in 1915, and gradually filled up all the way back to the Watts land, but he distinctly stated that no injury resulted prior to the sale, and that the first damage to the Leake land occurred in 1916, and the first to the Watts land in 1917.

Without going into more detail as to the evidence, which we have examined most carefully, we are constrained to the conclusion that the question as to when the first actual damage resulted to any part of the original boundary was one for the jury to determine.

The question is important because this case turns upon the effect of the statute of limitations.   The plaintiff is suing for permanent injury to the value of the land and concedes that the case is one for the recovery of entire damages.   The defendant interposed a plea of the statute of limitations.   The suit was brought in No-

vember, 1920.   The limitation is five years, and the decisive question in the case is whether the cause of action arose within that period.

The defendant contends that, since the damage was unquestionably caused by a permanent work of railway construction, the right of action accrued as soon as the construction was completed.   If this contention is sound, it ends the case, for the construction was completed in 1914 and the action was brought more than five years thereafter.

[3, 4] The defendant contends further that even if the right of action did not accrue until some actual damage resulted, still the action is barred because the evidence shows that the actual injury to the land had begun in 1915 and more than five years before the institution of the suit.   If this be true, and, further, if the actual damage started prior to the severance of the land into smaller parcels by the sale in 1915, then this alternative contention of the defendant is likewise the end of the case.   If the injury to the land developed before the division, the right of action was entire, the statute began to run at once as to the whole boundary, and its running was not suspended or affected by a subsequent division of the land into parcels.   We have already seen, however, that this latter contention of the defendant is concluded by the verdict of the jury.   It is not questioned that the burden of proving the facts necessary to establish the application of the statute of limitations was on the defendant.   *Goodell's Ex'rs* v. *Gibbons*, 91 Va. 608, 22 S. E. 504; *Va. Ry. & P. Co.* v. *Ferebee*, 115 Va. 289, 78 S. E. 556; *Va. L., etc., Co.* v. *O. D. McHenry*, 122 Va. 111, 122, 94 S. E. 173.

[5] The final question then is, did the statute begin to run as soon as the construction of the railway company's new work was completed, or did it only begin to run

from the time of the first injury to the land from such work? We think the answer, in reason and upon authority, is that the cause of action accrued, and the statute therefore began to run, at the time the damage commenced, and not at the time when the construction was completed.

There have been a number of cases in this State, and very many more in other jurisdictions, dealing with the limitation of actions for damage to real estate caused by permanent structures. In the majority of such cases, the precise and sharply defined question here under consideration has not arisen. In most cases of permanent works resulting in such an injury to land as that the owner may recover in one action all damages, past, present and future, the completion of the work and the commencement of the damage are practically simultaneous. This, either expressly or inferentially, appears to have been true in *Virginia Hot Springs Co.* v. *McCray*, 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179; *Southern Ry. Co.* v *McMenamin*, 113 Va. 121, 73 S. E. 980; *Worley* v. *Mathieson Alkali Works*, 119 Va. 862, 89 S. E. 880; *Magruder* v. *Va. Car. Chem. Co.*, 120 Va. 352, 91 S. E. 121; and *Southern Ry. Co.* v. *Fitzpatrick*, 129 Va. 246, 105 S. E. 663.

The case of *McKinney* v. *Trustees of E. & H. College*, 117 Va. 763, 86 S. E. 115, was an injunction suit, and did not determine whether the injury was to be regarded as permanent or intermittent, or whether an action for entire damages would lie, but it does hold that no cause of action accrued until some actual damage was done, quoting with approval the following from 1 Farnham on Waters and Water Rights, sec. 139b: "And the injury must be present and not prospective. The consequence of this is that the right of action accrues at the time the injury is done, regardless of the time when the works were completed."

In *N. & W. Ry. Co.* v. *Allen,* 118 Va. 428, 87 S. E. 558, the case was held to belong to the class in which successive actions could be maintained, the damage being intermittent rather than permanent, but the court adopted as the test for the application of the statute of limitations the time when the injury began and not the time when the structure was erected, the opinion expressly saying that "a thing which is lawful in itself is not actionable until the plaintiff has suffered injury on account of it."

The case of *Southern Ry. Co.* v. *White,* 128 Va. 551, 104 S. E. 865, did not involve the statute of limitations, but the opinion shows that the court (1) treated the injury to the land as permanent, and (2) regarded the cause of action as having arisen, not when the work of construction was completed, but when the first damage caused thereby was suffered. If this is the true import of the decision, and we think it undoubtedly is, then this *White Case* is directly in point as authority for the proposition that, in actions for entire damages resulting from railway structures, the limitation begins with the damage and not with the completion of the work.

[6] In *Southside R. R. Co.* v. *Daniel,* 20 Gratt. (61 Va.) 344, 367, the damage complained of resulted from an insufficient waterway. The railway company had the right to construct the waterway, but did the work in such a manner as not to allow the flood waters of a creek to escape as they had formerly done. No question of the statute of limitation arose, and the case was not classed as one for the recovery of entire damages, but the following language of the opinion by Judge Staples is in point: "Where, however, the act is lawful in itself, but negligently and improperly performed, the gist of the action is the damage, without which there can be no recovery." In the instant case, the work of filling the

trestle and diverting the stream was confined to the rail-
way company's premises, and was entirely lawful.  That
work, therefore, could not in itself give rise to a cause of
action.   It was negligently and inadequately done, and
ultimately damaged the plaintiff, but the damage and
not the act gave the plaintiff a right to sue.   We can see
no reason why this rule, and the authority of the *Daniel
Case, supra*, applies any less to an action for entire dam-
age than to one for intermittent and successive injuries.

So, too, in *Virginian Ry. Co.* v. *Jeffries' Adm'r*, 110
Va. 471, 66 S. E. 731, which was held by this court to be
controlled by the *Daniel Case, supra*, it was said by
Judge Cardwell, in delivering the opinion, that "no in-
jury having occurred to the sand bank directly from the
erection of the embankment by the railway company,
which was a lawful act, no suit could have been main-
tained until some actual injury was caused to the plain-
tiff's intestate by the action of the water in the river."

[7] In Freeman's note to *Eells* v. *C. & O. Ry. Co.*, 87
Am. St. Rep. at p. 791, it is said: "The statute of limi-
tations does not begin to run against a landowner's right
of action for the unlawful flowage of his land until he has
been injured, and his action has accrued, notwithstand-
ing the negligent structure and other acts causing the
overflow may have been growing and working for a
length of time beyond the period of limitation.   If a
structure, when completed, is permanent in character,
but not necessarily a nuisance, and afterwards becomes
one, the statute begins to run from the time an injury
is received, and not from the time the structure is
erected," citing numerous cases.

The case of *Ridley* v. *Seaboard, etc., R. R. Co.*, 118 N.
C. 996, 24 S. E. 730, 32 L. R. A. 708, was, by reason of
the pleadings, treated as one for entire damages, and the
court held that the statute of limitations against the ac-

33

tion (for obstructing water by a railroad embankment) began to run from the time when the first injury was sustained, and not from the date of the construction of the road.

In *Powers* v. *Council Bluffs*, 45 Iowa 652, 24 Am. St. Rep. 792, it appeared that the city cut a ditch in 1859 along the end of the plaintiff's lots, and turned into this ditch a stream of water flowing from the lots. No injury resulted to the plaintiff until 1866, when a cavity in the ditch, which began to form earlier and at a point remote from the plaintiff's lots, had gradually cut back up the stream and reached his property. The suit was not brought until, counting from the year 1866, the statutory period of limitation to actions in Iowa for entire damage had elapsed. The city pleaded the limitation, and the trial court, holding that the injury was permanent and the plaintiff's remedy therefor was complete when the damage first intervened, directed a verdict for the defendant, which was sustained on appeal. The case is in point here because, although a recovery was denied, the court held that the cause of action arose, not when the ditch was constructed, but when its construction first caused damage to the plaintiff. The court, on this point, said: "No suit could have been maintained until some actual injury was caused to the plaintiff by the action of the water, resulting from the improper construction of the ditch. Washburn on Easements and Servitudes, 591. But in 1866, if not earlier, the plaintiff's premises began to be injured, and then, of course, he had a right of action."

The decision in the case last cited is criticised in a note to Wood on Limitations (3rd ed.), p. 411, 412, but not upon the proposition for which it is here cited. That criticism is directed to the holding therein that the case was one for entire damages. We are not concerned with

that question here.    The plaintiff and the defendant are
agreed, and indeed, insist, that the instant case belongs
to that class.    Of course, however, if successive actions
might be brought against the defendant on account of
injuries flowing from the diversion of the stream, there
would be no ground whatever upon which to contend
that the present action is barred, because in no just view
of the evidence can it be said that any of the actual dam-
age allowed by the verdict of the jury for injury to the
Watts land occurred more than five years before the suit
was brought.    It is essential to a successful prosecution
of this writ of error for the defendant to maintain (1)
that successive actions do not lie, and (2) that the cause
of action arose as soon as the water was diverted.    The
contention that the actual damage commenced more
than five years before the institution of the suit was, as
we have seen, concluded by the verdict and judgment
below.

The several specific assignments of error will now be
briefly discussed.

1. It is urged that the court erred in granting and re-
fusing instructions, and in declining to set aside the ver-
dict and enter a final judgment for the defendant.    This
contention is rested upon the theory that the cause of
action accrued when the construction work by the de-
fendant was completed, and also, upon the theory that
some actual damage was conclusively shown to have re-
sulted to the plaintiff's land more than five years before
the suit was brought.    In granting and refusing instruc-
tions, and in ruling upon the motion to set aside the ver-
dict, the trial court acted in conformity with the views
which we have hereinabove expressed.    It could not, in
view of the evidence, properly set aside the verdict upon
the question as to when the first damage was done to the
plaintiff's land.    As to the instructions, the court told

the jury at the request of the plaintiff, that the burden was on the defendant to show by a preponderance of evidence that the action was barred by limitation, in so far as it relied on that defense; and that the plaintiff's right to sue did not arise unless and until his land actually suffered injury. The court refused the defendant's request for four instructions based upon the theory that the cause of action arose when the construction work was completed, and then (subject to the defendant's exception as to the four instructions refused and as to those given for the plaintiff) the court gave the following instruction at the instance of the defendant:

"The court instructs the jury that even though they may believe that the plaintiff or his predecessor in title, could not, at the time of the completion of the construction work by the defendant, which is complained of, have discovered or been able to tell that his land would be damaged by the said diversion of the said stream and the construction work; yet, if they believe from the evidence that the property was damaged to any extent, more than five years prior to the institution of this action, they must find for the defendant, as the action should have been brought within five years from the date on which the property was first damaged to any extent."

There was no error in the instructions, or in the refusal to set aside the verdict as contrary to the evidence.

[8] 2. Another ground on which the court below was asked to set aside the verdict was that the damages awarded were excessive; and we are now asked to reverse the judgment on that ground. The amount fixed by the verdict was $1,430.00. Watts paid only $1,600.00 in September, 1920, for the whole tract of twenty-eight acres purchased by him from Beard. This same tract, being section 2 of the Huntt land, was bought by Beard at the sale in July, 1915, for $1,230.00, at which time it had suffered no material damage from the diversion of

the water. The only portion of the twenty-eight acres affected by the damage herein sued for is the six and one-half acres of bottom land. These facts, standing alone, would seem to indicate that the jury did render an excessive verdict. But there was direct and credible testimony that the actual value of the damaged land prior to 1917 was as much as $300.00 an acre, and that its value at the time the suit was brought had been reduced to less than $10.00 an acre. The jury visited and inspected the land under the order of the court, and they were familiar with its location and accessibility. In view of these considerations, and upon the whole evidence as to the amount of damage, we could not properly interfere with the verdict under this assignment of error.

[9, 10] 3. We have not overlooked the two remaining assignments, but have given them careful consideration with the result that we do not find anything in them which would justify a reversal of the judgment. One of them complains of leading questions and the other of the introduction of so-called hearsay evidence. The questions complained of as leading were objectionable on that ground, but the objection was not made until after a number of them had been answered, and, moreover, the answers thereto were merely cumulative of other evidence in the case to which there was and could have been no objection. The so-called hearsay evidence, if it was hearsay, could not have prejudiced the defendant. It was in answer to the statements in the commissioner's report of sale, introduced by the defendant over the plaintiff's objection, and its purpose was to minimize the effect of that report. We have already held that the report had no probative value as to the damage, and the attack upon it in this respect was harmless.

We find no error in the judgment complained of, and the same must be affirmed.

*Affirmed.*