Syllabus.

# Wytheville.

NORFOLK AND WESTERN RAILWAY CO. v. ALLEN AND OTHERS.

June 10, 1915.

Reheard January 13, 1916.

1. PLEADING—*Multiplication of Issues—Striking Unnecessary Pleas.*—It is not error to strike out a plea when the same facts provable thereunder are equally provable under another plea which was not stricken out. The multiplication of issues tends to embarrass and confuse juries and to defeat the ends of justice, and hence should be avoided.

2. LIMITATION OF ACTIONS—*Occasional Interruptions of Water—Permanent Structures.*—If pumping water from a stream to the injury of a plaintiff be not continuous but only at intervals, a new injury is inflicted on the plaintiff at each operation, and entire damages cannot be recovered in a single action. The fact that the tank and pump connected therewith, erected by the defendant on his own land, are permanent structures is wholly immaterial. It is not their erection but the taking of water from the stream that constitutes the plaintiff's injury.

3. LIMITATION OF ACTIONS—*Nuisance—Permanent Structures—When Unlawful.*—When a permanent structure is unlawful in and of itself, irrespective of any damages which may flow from it, a cause of action accrues at once upon the erection of the unlawful structure, and the plaintiff may recover once for all, but when a structure is lawful, as when it is erected on defendant's own premises and is not *per se* injurious to the plaintiff, then the plaintiff's cause of action arises not from the erection of the structure, but from the use thereof resulting in injury to him.

4. LIMITATION OF ACTIONS—*Increasing Quantity of Water Taken—When Right of Action Accrues.*—Where a plaintiff is injured for the first time by the increased quantity of water taken from a stream by the defendant, his right of action accrues from that date, although the defendant long before erected a tank and pumping station on its own land and took smaller quantities of water from the stream.

ON REHEARING.

5. NUISANCE—*Permanency—Entire Damages—Limitation of Actions.*— When the original act creating a nuisance to land is permanent in its nature, and is at once productive of all the damage which can

ever result from it, so that when the act is completed all the damage that can be effected thereby is consummated, the entire damages must be recovered in one action, and the statute of limitations begins to run against the cause of action from the time of the complete erection of the nuisance.

6. EVIDENCE—*Introduction for One Purpose—Use for Another—Conflict.*—Evidence introduced by the defendant to show that there never had at any time been any damage to the plaintiff by reason of the alleged nuisance complained of, and which was never treated by the plaintiff or the defendant or the trial court as tending to show anything else, cannot be said to conflict with the statement that the "uncontradicted evidence shows that the plaintiff had suffered no damage prior to the year 1907 by reason of the erection or operation of the defendant's pumping station."

7. NUISANCE—*Permanency—Successive Suits.*—In all cases of doubt respecting the permanency of the injury resulting from a nuisance, the courts are inclined to favor the right to bring successive actions, otherwise the effect would be to give the defendant, because of his wrongful act, the right to continue the wrong; a right equal to an easement. On the other hand, such a principle would involve the injustice of compelling the defendant to pay for a perpetual wrong which he would perhaps put an end to at once on the adjudication that the erection is a nuisance.

8. APPEAL AND ERROR—*Expression in Opinion—Effect on Future Litigation—Judgments.*—The effect of a decision in a particular case upon other possible litigation between the same parties can only be determined when that question arises.

Error to a judgment of the Circuit Court of Prince Edward county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Kirkpatrick & Howard* and *Marshall McCormick,* for the plaintiff in error.

*E. Warren Wall* and *Coleman, Easley & Coleman,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

It appears that in 1903 the defendant railway company installed upon Lockett's creek, in the county of Prince Edward,

a steam pumping station for the purpose of supplying a tank on its right of way with water for locomotive purposes. It further appears that the plaintiff owned a corn and flour mill on Falling creek, into which Lockett's creek empties, about one-half mile below the defendant's pump. On July 2, 1912, the plaintiff instituted this action, alleging that from July, 1907, to the bringing of this suit, the defendant had been pumping from the stream and diverting its waters from their usual course to such an extent as to seriously and injuriously interfere with the operation of the mill, and asking for compensation in damages for the injury thereby sustained.

The defendant pleaded the general issue and filed three pleas of the statute of limitations. The first is in the usual form, while the additional pleas, Nos. 2 and 3, set out with great elaboration the defendant's view of the case.

There was a verdict and judgment for the plaintiff, which is brought under review by this writ of error.

The controlling question in the case was whether or not the demand of the plaintiff was barred by the statute of limitations, the determination of that question depending upon when the plaintiff's cause of action arose.

The contention of the defendant was that its tank and pumping station constituted a permanent structure, and, therefore, that suit to recover damages resulting from its operation must be brought within five years from the commencement of the operation of such structure, otherwise the right to recover was barred. This contention was presented by the pleas of the statute of limitations and also by instruction No. 2 asked for by the defendant, which was refused. This instruction told the jury that "if the pumping house and tank and the pipes connecting the tank with the water in Lockett's creek were built in 1902 or 1903, although they may have been repaired in the meantime, and have been in continuous use from that time down to the institution of this suit, and that the said structures were permanent in their character, then the plaintiff

could not recover, the court instructing the jury that the plaintiff should have brought his suit within five years after the completion of the structures, if permanent in their character, and in that one suit he was entitled to recover his entire damage, both past, present and future, and that the claim would be barred by the statute of limitations."

We are of opinion that the court did not err in striking out the additional pleas Nos. 2 and 3 of the statute of limitations. Without commenting upon other objections to these pleas, it is sufficient to say that they were superfluous and unnecessary. As already seen, there were three pleas of the statute of limitations, whereas any facts provable under either of the rejected pleas were equally provable under the plea of the five years' statute which was not stricken out.

"The multiplication of pleas multiplies issues, and the multiplication of issues tends to embarrass and confuse juries and to defeat the ends of justice. Courts do not, therefore, favor the practice of multiplying issues by unnecessary pleas, and it is not error to exclude a plea which presents a defense which may be made under a plea already in." *Guaranty Co.* v. *Bank,* 95 Va. 481, 490, 28 S. E. 909.

We are further of opinion that the court did not err in refusing instruction No. 2 which was asked for by the defendant. There was no evidence to support such an instruction and under the facts shown of record it was wholly irrelevant and misleading. The uncontradicted evidence shows that the plaintiff suffered no damage prior to the year 1907 by reason of the erection or operation of the defendant's pumping station. This fact is emphasized by the proof adduced by the defendant, in support of its contention that the plaintiff had suffered no damage at any time, either before or after the year 1907. Whether or not the tank and the pump connected therewith constituted a permanent structure was an immaterial question in this case. The erection of these structures by the defendant upon its own premises was lawful and harmless, however permanent its

character, affording the plaintiff no cause of action whatever. Diverting the water by the operation of the pump was the cause of the plaintiff's injury, and the defendant's own evidence shows that this operation was not continuous, but only at intervals, thereby inflicting a new injury with each operation.

It is well settled that when a permanent structure is unlawful in and of itself, irrespective of any damages which flow from it, a cause of action accrues at once upon the erection of the unlawful structure, and the plaintiff may recover once for all, but when a structure is lawful, as when it is erected on the defendant's own premises, and is not *per se* injurious to the plaintiff, then the plaintiff's cause of action arises not from the erection of the structure, but only for such injury as may result from the use of the structure. In other words, a thing which is lawful is not actionable until the plaintiff has suffered injury on account of it. A single suit, under the facts of this case, could not be made to embrace future damages for the reason that it cannot be assumed that the defendant will continue to illegally inflict injury upon the plaintiff. To indulge such a presumption might result in awarding the plaintiff damages for an injury never suffered by him. *Hot Springs Co.* v. *McCray,* 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179; *American Locomotive Works* v. *Hoffman,* 108 Va. 363, 61 S. E. 759, 128 Am. St. Rep. 953; *Virginian Ry. Co.* v. *Jefferies,* 110 Va. 471, 66 S. E. 731; *Southern Ry. Co.* v. *McMenamin,* 113 Va. 121, 73 S. E. 980; *Va., etc., Power Co.* v. *Ferebee,* 115 Va. 289, 78 S. E. 556.

The *Hot Springs* and the *McMenamin cases, supra,* which are relied on by the defendant, are wholly different in their facts and are easily distinguished from the present case. The discussion of the law in those cases is, however, helpful and, so far as applicable, sustains the principles herein announced.

It is clear from the evidence that no cause of action accrued to the plaintiff from the operation of the defendant's pump until July, 1907, about which time larger pipes were installed

by the defendant in connection with its pump, which carried off from the stream greater quantities of water than before, thereby crippling for the first time the operation of the plaintiff's mill. It is further plain, under the established facts, that this case belongs to the class where the plaintiff is entitled to maintain successive actions for the damages sustained from time to time. This being so, the plaintiff's right of recovery is not barred, but is limited by the statute to the damages sustained during the five years immediately preceding the institution of this suit.

Upon the whole case, we find no error to the prejudice of the defendant, and the judgment complained of is, therefore, affirmed.

*Affirmed.*

### REHEARD JANUARY 13, 1916

KELLY, J., delivered the opinion of the court.

This case is before us upon a rehearing. The former opinion, delivered by Judge Harrison, was handed down at Wytheville on June 10, 1915. The decision of the case, according to our former and present view, involves the single question of the statute of limitations, all other questions, in so far as they are material at all, being so only to the extent that they bear upon this controlling inquiry.

This question may be stated, somewhat abstractly, as follows: A railroad company installs upon its own land a steam pumping station by means of which it pumps water from a stream in which it has the rights of a riparian owner and stores the water thus pumped from the stream in a tank from which it is taken as needed for use in the company's locomotive engines. At the time of the establishment of the pumping station, and continuously thereafter, a land owner lower down on the stream owns and operates a flour mill. For some years the water taken from the stream by the railroad company does not materially or in-

28

juriously affect the power at the mill.  On and after a certain subsequent date, however, the company begins taking more of the water, with the result that the capacity of the mill is seriously impaired, and the mill owner brings an action at law to recover damages.  Does his cause of action arise when the pumping plant is installed, or does it arise when by the operation of the plant the company begins taking water in quantities sufficient to injure him?

This court held at the former hearing, and upon further consideration is still of opinion, that the cause of action arose when the injury began and not when the pumping plant was installed, the language of the opinion on this point being as follows: "Whether or not the tank and the pump connected therewith constituted a permanent structure was an immaterial question in this case.  The erection of these structures by the defendant upon its own premises was lawful and harmless, however permanent its character, affording the plaintiff no cause of action whatever.  Diverting the water by the operation of the pump was the cause of the plaintiff's injury, and the defendant's own evidence shows that this operation was not continuous, but only at intervals, thereby inflicting a new injury with each operation."

Few questions have been the subject of more frequent consideration by the courts than the one involved in this case.  The authorities are in the main harmonious in stating the general principles, but they are not so in the application of these principles to particular cases.  In the well-considered case of *Harvey* v. *Mason City, etc., R. Co.,* 129 Iowa 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483, 490-1, the court says:  "The confusion which is found in the precedents has arisen not so much from the statement of governing principles as from the inherent difficulty in clearly distinguishing injuries which are original and permanent from those which are continuing and in assigning each particular case to its appropriate class  .   .   .   Possibly as good an illustration of the distinc-

tion as can be suggested is in the case of the construction of a mill dam across the course of a stream. So far as the dam operates to permanently overflow the land of another and take away from the owner all beneficial use of his property, the damage may be treated as original and all recovered in one action, but so far as it may cause only a periodical or occasional flooding, the damage is continuing and successive recoveries can be had . . . Not keeping in mind this distinction between the permanent character of the cause and the resultant injury, the court has been led in a few instances (referring to certain Iowa cases) to appear to make the former the sole test whether the damages in question were original."

The general controlling principle, in its original and unquestionably correct form, is stated by Mr. Freeman in a note to the case of *St. Louis, etc., Ry.* v. *Biggs* (Ark.), 20 Am. St. Rep. 174-176, as follows: "The authorities agree that when the original act creating a nuisance to land is permanent in its nature, and is at once productive of all the damage which can ever result from it, and at once destroys the estate for all practicable purposes, so that when the act is completed all the damage that can be effected thereby is consummated, the entire damages must be recovered in one action, and the statute of limitations begins to run against the cause of action from the time of the complete erection of the nuisance," citing *Troy* v. *Cheshire R. Co.*, 23 N. H. 83, 55 Am. Decs. 177, and numerous other cases.

In the same note Mr. Freeman says: "What constitutes a permanent nuisance within the meaning of the rule above given is thus defined in a leading case: 'Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, there the damage is an original damage and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong to apply the labor necessary to remove the

cause of injury, and can only cause it to be done if at all by the expenditure of his own means,' " citing *Troy* v. *Cheshire R. Co., supra.*

The above-cited cases, and many others of the same general tenor and effect, are reviewed in the opinion of this court, delivered by Judge Cardwell, in *Hot Springs Co.* v. *McCray,* 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179. The principle of the decision in the latter case has been followed in a number of other Virginia cases, all of which are cited by Judge Harrison in the former opinion herein. To these cases may be added *McKinney* v. *Trustees of Emory and Henry College,* 117 Va. 763, 86 S. E. 115. This latter case also turned solely upon the statute of limitations and is peculiarly in point here, because it distinctly holds that although the sewage system of the college had been installed and a small part thereof in use for more than five years before the institution of the suit, the discharge of sewage into the stream being negligible until later, the "cause of action arose when the discharge of sewage into Emory creek was in sufficient quantities to pollute the stream and constitute a nuisance." In other words, the court in that case adopted as the test for the application of the limitation, not the permanent character and purpose of the sewage system, but the damage from its operation.

In the instant case there was no damage or injury to the water power until within five years before the bringing of the suit. Since that time there has never been a moment when the pumping station in itself would have done the mill owners any damage. Instead of constituting a permanent injury which, to use the language of the authorities approved by this court in *Hot Springs Co.* v. *McCray, supra,* "will continue without change from any cause but human labor," it must have the daily aid of human labor before it can cause any injury whatever. When human labor is applied it may or may not cause injury (as has been demonstrated by actual operation without injury for several years), depending upon the amount of water which

the company sees fit to use.  The case, in this respect and in principle, is much like that of *Commissioners of Aberdeen* v. *Bradford,* 94 Md. 670, 51 Atl. Rep. 614, where the defendant had diverted the water from a stream into a reservoir or intake well, pumped it from there to a stand pipe, and thence carried it in pipes to the town of Aberdeen.  The plaintiff, a riparian owner on the stream below, brought an action for damages, and the defendant relied on the statute of limitation, claiming that its reservoir was a permanent structure which created but a single cause of action in which all damages, past, present and future, must be recovered.  The court decided against the defense of the statute of limitations, holding that the reservoir did not give rise to the cause of action, but that the cause of the injury was "the daily pumping" whereby the water was taken out of the well and distributed through the stand pipe to the town.

It is earnestly contended in the petition for rehearing that the former opinion in this case was in error in stating that "the uncontradicted evidence shows that the plaintiff had suffered no damage prior to the year 1907 by reason of the erection or operation of the defendant's pumping station."  The evidence which the railway company now relies upon to produce a conflict upon this point was introduced by it for a wholly different purpose, namely, to show that there never had at any time been any damage to the plaintiff.  Neither the plaintiff nor the defendant, nor the court below, treated that evidence as tending to show anything else.  This was the theory upon which the case was tried by the defendant, and this was the only theory upon which, from the defendant's standpoint, there was any duty upon the trial court to instruct the jury.

The request is made in the petition for rehearing that, if we shall adhere to our previous decision, we modify the opinion so as to eliminate therefrom certain expressions to the effect that a single suit under the facts of this case cannot be made to embrace future damages, and the reason assigned for this request

is that there is an alleged chancery suit pending against the company, the purpose of which is to enjoin the further operation of the pumping station. It is difficult in a case of this character to discuss the statute of limitations without in some degree dealing with the question as to whether the cause of action may result in one or in a succession of suits. As is very aptly said by counsel for the railway company in their original petition for this writ of error, the two questions "are so interwoven in our legal literature as to render it necessary to discuss them jointly."

In Sutherland on Damages (3d Ed.), vol. IV, sec. 1039, p. 3034, the author makes the following statement: "In all cases of doubt respecting the permanency of the injury the courts are inclined to favor the right to bring successive actions. Otherwise, the effect would be to give the defendant, because of his wrongful act, the right to continue the wrong; a right equivalent to an easement. A right to land cannot be thus acquired. On the other hand, such a principle would involve the injustice of compelling the defendant to pay for a perpetual wrong which he would perhaps put an end to at once on the adjudication that the erection is a nuisance." The authorities seem to fully sustain this statement. See *Southside R. Co.* v. *Daniel,* 20 Gratt. (61 Va.) 344; *Jos. Schlitz Brewing Co.* v. *Compton,* 142 Ill. 511, 32 N. E. 693, 18 L. R. A. 390, 34 Am. St. Rep. 92, 94; *Harvey* v. *Mason City, etc., Ry. Co.,* 129 Iowa 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483, 489, 8 R. C. L., sec. 79.

The chancery suit referred to is not a part of the record and is not before us otherwise than by the reference to it in the petition for rehearing. We can only say here that we are dealing solely with the case in hand. The decision seems to us right in itself, and its effect upon other possible litigation between the parties can only be determined when that question arises.

Upon the whole case we are of opinion that the judgment complained of should be affirmed.

*Affirmed.*