Statement.

𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

WORLEY v. MATHIESON ALKALI WORKS.

September 11, 1196. 1916

Absent, Sims, J.

1. APPEAL AND ERROR—*Petition to Specify Errors.*—A petition for a writ of error is in the nature of a pleading, and must state clearly and distinctly the errors relied on to reverse the judgment.

2. NUISANCE—*Permanent Nuisance—Entire Damages.*—Undoubtedly, repeated actions may, as a general rule, be brought to recover for nuisances as long as the nuisance continues; but where there is a permanent nuisance, the consequences of which, in the normal course of things, will continue indefinitely, there can be but a single action therefor, and the entire damage suffered, both past and future, must be recovered in that action, and the right to recover will be barred unless it is brought within the prescribed number of years from the time the cause of action accrued.

3. NUISANCE—*Permanency—Damages—Limitation of Actions.*—A nuisance consisting of an established plant is permanent in its character, where it appears that a large sum of money was expended in its establishment, many hands employed, it was intended to be permanent when established many years ago, and has been so treated ever since, and that as long as operated it will be a constant and continuous nuisance. An action to recover damages, past and future, for such a nuisance must be brought within five years from the time the cause of action accrued, else it will be barred by the statute of limitations.

Error to a judgment of the Circuit Court of Smyth county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*L. P. Summers*, for the plaintiff in error.

*B. F. Buchanan, White, Penn & Penn* and *Hutton & Hutton,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought to recover damages for alleged injury to the property of the plaintiff by the pollution of the waters of the North Fork of the Holston river. The defendant, Alkali Works, pleaded the general issue and filed its plea of the statute of limitations averring that the supposed cause of action in the declaration mentioned did not accrue to the plaintiff at any time within five years next before the commencement thereof. Upon these issues a special jury heard the evidence adduced and rendered their verdict in favor of the defendant company. This verdict was sustained by the judgment of the circuit court to which this writ of error was awarded.

Most of the errors mentioned in the petition are, under the decisions of this court, insufficiently assigned. *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928; *A. & D. R. Co.* v. *Reiger,* 95 Va. 418, 28 S. E. 590; *N. & W. Ry. Co.* v. *Perrow,* 101 Va. 345, 43 S. E. 614; *Amusement Co.* v. *Pine Beach Co.,* 109 Va. 325, 63 S. E. 1002, 16 Ann. Cas. 1120. A petition for a writ of error is in the nature of a *pleading,* and must state clearly and distinctly the errors relied on to reverse the judgment. As said in *Bank* v. *Trigg Co.,* 106 Va. 327, 56 S. E. 158, "Counsel should *lay his finger on the error.*"

We deem it unnecessary to point out these defective assignments of error in detail, for the reason that in the view taken of this case if can be properly disposed of under the assignment which calls in question the action of the circuit court in refusing to set aside the verdict because contrary to the law and the evidence.

It appears from the record that the defendant company owns and operates an extensive plant at Saltville, Virginia, which was completed and put in operation in June, 1895, the purpose being the manufacture of soda ash, caustic soda, or concentrated lye, and bicarbonate or ordinary cooking soda. The plant was located where it is because of the presence there of a large bed or deposit of salt rock. About sixty-four wells have been drilled from which the salt solution, or brine, is pumped to the plant, and the record of these wells shows that the supply of salt is practically inexhaustible. As indicating the permanent character of the structures constituting this plant, and that it was intended from the beginning to be permanent, the fact may be mentioned that the plant has cost approximately $6,000,000, and has upon its payroll about one thousand employees, and has been in continuous operation since June, 1895. It further appears that in the process of manufacture there is produced a waste known as "distiller waste," referred to in the evidence as "muck." This muck has been produced as the result of the same process since the plant was first erected; 97½ per cent. of this distiller waste is a clear solution and 2½ per cent. solid matter. From the beginning the defendant has undertaken to provide for the solid part of this waste by its deposit in very large dams erected for that purpose, the distiller waste being carried to the dam by means of a pipe. When the waste reached the dam the plan of operation was a sedimentation, by which the solid portion of the waste settled to the bottom and the clear solution discharged into the river through a "spillway." For forcing the distiller waste into the dam, two forty horse-power electric motor pumps are installed, so that when one is out of commission the other can be put immediately in operation, and thus

avoid the discharge of the waste into the river longer than is absolutely necessary. The change from one pump to another takes from fifteen to thirty minutes during which time all of the distiller waste is turned into the river. The record shows that no plan has been devised by which this can be avoided, and that it is impossible to stop the plant while making the change from one pump to another.

Without further detail as to the method of operating this plant, it must suffice to say that no negligence can be imputed to the defendant in the manner of its operation. Every precaution known to the conduct of the business appears to have been taken to provide for its waste product, and with reasonable success. As to that portion of the waste which passes from the dam in liquid form through the spillway, no method has been devised or attempted to keep it from the river. The plant was originally constructed with the means provided for returning this liquid waste to the river, and this method has been pursued as a daily practice from the beginning. It is the discharge of this distiller waste into the river of which the plaintiff complains and introduces evidence tending to show that it injures his land, kills the fish in the river and is hurtful to stock that drink it. As usual in such cases, there is a conflict of evidence as to the harmful effects, if any, produced by the various substances discharged into the river by the defendant.

The law applicable to this case has been repeatedly announced by this court in recent decisions, where it is said: "Undoubtedly, repeated actions may, as a general rule, be brought to recover for nuisances as long as the nuisance continues; but where there is a permanent nuisance, the consequences of which, in the normal course of things, will continue indefinitely, there can be but a single action therefor, and the en-

tire damage suffered, both past and future, must be recovered in that action, and the right to recover will be barred unless it is brought within the prescribed number of years from the time the cause of action accrued." *Hot Springs Co.* v. *McCray*, 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179; *Southern Ry. Co.* v. *McMenamin*, 113 Va. 121, 73 S. E. 980; *N. & W. Ry. Co.* v. *Allen*, 118 Va. 428, 87 S. E. 558.

It is clear from the evidence in the present case that the damage alleged to have been sustained by the plaintiff has resulted from a cause permanent in its character. It is manifest that the plant, when first constructed, was intended to be permanent, and it has been so treated and used ever since. As long as it is operated, so long will the nuisance complained of be constant, continuous and injurious to the plaintiff. In the light of the authorities cited, this is plainly the case of a permanent nuisance, the consequences of which, in the normal course of things, will continue indefinitely. Therefore, the plaintiff should have brought his action for the entire damage, past and future, and should have brought it within five years from the time the cause of action accrued, which was in 1895 when the defendant first put its plant into operation. Having failed to do this, the plaintiff's claim is clearly barred by the statute of limitations.

The case was submitted to the jury without prejudice to the rights of the plaintiff, and their verdict in favor of the defendant is abundantly sustained by the evidence; indeed, upon the issues joined and the evidence adduced, no other proper verdict could have been rendered.

There is no error in the judgment complained of and it must be affirmed.

*Affirmed.*