# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Fentress Families
Trust *et al.*

    v.

Virginia Electric
and Power Co. *et al.*

Case No. (Civil) CL12-475

Darryl Sears *et al.*

    v.

Virginia Electric
and Power Co. *et al.*

Case No. (Civil) CL12-476

March 25, 2016

By Judge Randall D. Smith

This matter is before the Court on the following motions: (1) Virginia Electric and Power Company's ("Dominion") "motion for summary judgment on statute of limitations"; (2) Headwaters Resources, Inc. ("Headwaters"), and VFL Technology Corporation's ("VFL") special

plea in bar on the statute of limitations; (3) MJM Golf, L.L.C.'s ("MJM") motion for summary judgment based on statute of limitations; and (4) Headwaters and VFL's "motion for partial summary judgment on plaintiff Jasmine Andrews's claims." With the exception of Headwaters and VFL's motion for partial summary judgment on plaintiff Jasmine Andrews's claims, it appears that identical motions were filed in both cases (CL12-475 and CL12-476), and the motions were argued together at the hearing on February 24, 2016. Accordingly, the Court will consider and rule on the motions concurrently in this letter. Counsel have thoroughly briefed all the issues and argued their respective positions at the February 24th hearing.

As alleged in both complaints, these actions arise out of the use of coal ash and binding agents in the construction of a golf course in the City of Chesapeake. The plaintiffs allege that from 2002 through 2007, the defendants dumped 1.5 million tons of coal ash and binding agent into an unlined pit at the golf course construction site, and that the majority of the ash was piled in the "northern discrete areas of the site in 2002 and 2003." (Compls. ¶¶ 2 & 98.) The plaintiffs allege, *inter alia*:

> In 2002, as many as 100 dump trucks a day, often without proper covering of ash and binding agent, were leaving the Dominion landfill loaded with toxic and radioactive coal ash and binding agent and bound for what would become the purported "golf course" and the coal ash left the Site in massive amounts, settling onto the Plaintiffs' homes and property, thereby invading and creating a nuisance.

(Compls. ¶ 129; *see also* Compls. ¶¶ 152-59.) The plaintiffs further allege:

> [T]he physical invasion of the contaminants from the Defendants' toxic and radioactive coal ash and binding agent [that] invaded the Plaintiffs' homes and property via airborne contamination has detrimentally changed the physical condition of Plaintiffs' land itself, as well as posing [sic] a substantial and significant risk to Plaintiffs' lives, health and property values. . . .
>
> The defendants' toxic coal ash . . . settled and continues to settle upon all of the Plaintiffs' homes, property, real estate and persons. Through such physical invasion and noxious touching, this constitutes a continuing and on-going nuisance. All of the Plaintiffs' homes, property, real estate and persons have been invaded via airborne ash made up of deadly chemicals, metals, and contaminants, some of which are radioactive. The toxins carried, and continue to be carried, by forces of weather and wind, have resulted in a continuing

nuisance and noxious touching upon the surfaces of all of the plaintiff's [sic] homes, property, real estate and persons.

(Compls. ¶¶ 197-98.)

The Fentress Families Trust *et al.* (CL12-475) action was originally filed on March 27, 2009, as case number CL09-710, and the Darryl Sears, *et al.* action (CL12-476) was originally filed on August 13, 2009, as case number CL09-1914. Both cases were nonsuited and then subsequently refiled as the instant matters on February 21, 2012.

## I. *Dominion's Motion for Summary Judgment Based on the Statute of Limitations*

Dominion has filed a "motion for summary judgment on the statute of limitations" as to all plaintiffs who are not minors and who are not making personal injury claims. Dominion's motion is specifically regarding plaintiffs' nuisance claims "for loss of use and enjoyment of their property and diminished property value due to alleged physical invasion of alleged airborne coal as dust that first began in 2002." (Dominion's Mot. for Sum. J. on Stat. of Lim. at 2.)

Motions for summary judgment are governed by Rule 3:20, which "provides for a disposition of matters where the only issue is a question of law and no trial is necessary because there is no genuine dispute as to any material fact." *Tri-Port Terminals, Inc. v. Hitch S. Branch Terminal, L.L.C.,* 87 Va. Cir. 314, 315 (Chesapeake City 2013) (citing *General Accident Fire & Life Assurance Corp. v. Cohen,* 203 Va. 810, 814, 127 S.E.2d 399, 402 (1962)). "Accordingly, a grant of summary judgment is proper if, in consideration of the undisputed facts in the light most favorable to the nonmoving party, it appears that the moving party is entitled to judgment as a matter of law." *Id.* at 315-16 (citing *Andrews v. Ring,* 266 Va. 311, 318, 585 S.E.2d 780, 783-84 (2003)). In considering a motion for summary judgment, the Court accepts as true "those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Dudas v. Glenwood Golf Club,* 261 Va. 133, 136, 540 S.E.2d 129, 130-31 (2001) (quoting *Dickerson v. Fatehi,* 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997)).

Va. Code § 8.01-235 requires that an objection to the statute of limitations be raised as an "affirmative defense specifically set forth in a responsive pleading." Dominion's answer, filed March 21, 2014, specifically raises the statute of limitations issue as an affirmative defense. Additionally, Dominion filed a special plea in bar to the statute of limitations on August 31, 2012, and Dominion is now requesting that the Court grant summary judgment on the statute of limitations issue based upon the pleadings, admissions, and answers to interrogatories. *See Kohn v. Marquis,* 288 Va. 142, 149, 762 S.E.2d 755, 758 (2014) (holding that a trial court did not err

in granting summary judgment on a plea in bar); *Board of Supervisors v. Burke & Herbert Bank & Trust Co.*, 79 Va. Cir. 26, 28 (Fairfax Cnty. 2009) (granting summary judgment on statute of limitations where no material facts were in dispute); *Loftis v. Chesapeake Corp. of Va.*, 1 Va. Cir. 143 (Richmond City 1972) (granting summary judgment on a special plea).

> It is well-established that statutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application. A statute of limitations may not be tolled, or an exception applied, in the absence of a clear statutory enactment to that effect. Any doubt must be resolved in favor of the enforcement of the statute.

*Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll Farm, L.L.C.*, 290 Va. 5, 773 S.E.2d 162, 163-64 (2015) (quoting *Casey v. Merck & Co.*, 283 Va. 411, 416, 722 S.E.2d 842, 845 (2012)).

In the instant case, there is no genuine dispute of material fact relating to the issue of the statute of limitations; Dominion relies on the plaintiff's own allegations contained in the complaint. Further, Dominion and the plaintiffs agree that the dumping of fly ash began in 2002 and that the original actions were filed in 2009. The applicable statute of limitations is five years from accrual of the cause of action, pursuant to Va. Code § 8.01-243(B). The only issue is whether the plaintiffs' complaint alleges permanent or temporary nuisance.

In cases involving a permanent nuisance, a "plaintiff's cause of action accrues when the damage first occurs, and the burden of proof on the statute of limitations is on the defendant." *Spicer v. City of Norfolk*, 46 Va. Cir. 535, 546 (Norfolk City 1996) (citing *Southern Ry. v. Watts*, 134 Va. 503, 512-13, 114 S.E. 736, 739-80 (1992)); see Va. Code § 8.01-230 ("In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property . . . ."); *Virginia Hot Springs Co. v. McCray*, 106 Va. 461 469-70, 56 S.E.216, 220 (1907) ("[W]hen by wrongful acts a permanent nuisance is created and the injury therefrom is direct, immediate, and complete, so that the damages can be immediately measured in a single action, the statute of limitations will begin to run from the erection of the nuisance."); *see also Shipman v. Kruck*, 267 Va. 495, 503, 593 S.E.2d 391, 323 (2004) ("In Virginia, 'we have followed the general rule that the applicable period of limitation begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage, and we have said that difficulty in ascertaining the existence of a cause of action is irrelevant.'" (quoting *Virginia Military Inst. v. King*, 217 Va. 751, 759, 232 S.E.2d 895, 900 (1977))); *Norfolk & W. Ry. v. Allen*, 118 Va. 428, 432, 87 S.E. 558,

559 (1915). Additionally, it is "not essential to the defense of the statute of limitations that the damage complained of should exist to *the same extent* during the period of five years." *Southern Ry. v. McMenamin*, 113 Va. 121, 132, 73 S.E. 980, 983 (1912) (emphasis in original).

The Circuit Court of the City of Norfolk in *Spicer* noted that, generally, permanent nuisance cases of the Supreme Court of Virginia may be divided into two categories: (1) those where inactive structures such as dams, culverts, or creek diversions became a nuisance through the forces of nature; and (2) those where the "normal operation of the structure will necessarily produce the ills complained of," such as railway yards, chemical plants, iron mines, and canning factories. *Spicer*, 46 Va. Cir. at 546-47 (citations omitted).

In both *McCray* and *Worley v. Mathieson Alkali Works*, 119 Va. 862, 89 S.E. 880 (1916):

> it was shown that damages resulted from the erection of permanent structures, the use of which produced the injury complained of immediately after the structures were first operated, *the consequences of which continued in the normal course of such operations, and might have been expected to continue indefinitely.* It was held that claims for damages therefor[e] were barred unless action was brought within the number of years prescribed by the statute of limitations, because the causes of damages were permanent in their character, and the cause of action therefor[e] accrued when the damage originated.

*G. L. Webster Co. v. Steelman*, 172 Va. 342, 363, 1 S.E.2d 305, 314 (1939) (emphasis added); *accord Magruder v. Virginia-Carolina Chem. Co.*, 125 Va. 352, 354, 91. S.E. 121, 222 (1917). In *Norfolk County Water Co. v. Etheridge*, 120 Va. 379, 91 S.E. 133 (1917), the Supreme Court stated:

> Undoubtedly, repeated actions may, as a general rule, be brought to recover for nuisances as long as the nuisance continues; but where there is a *permanent nuisance, the consequences of which, in the normal course of things, will continue indefinitely*, there can be but a single action therefor[e], and the entire damage suffered, both past and future, must be recovered in that action, and the right to recover will be barred unless it is brought within the prescribed number of years from the time the cause of action accrued.

*Id.* at 380-81, 91 S.E. at 134 (emphasis added) (quoting *Worley*, 119 Va. at 865-66, 89 S.E. at 881); *accord Wright v. Richmond*, 146 Va. 835, 842-43, 132 S.E. 707, 709 (1926); *see Spicer*, 46 Va. Cir. at 547 ("[I]ntermittent

and recurrent injuries to the plaintiff's land may be caused by a permanent nuisance.").

In *Spicer*, the Circuit Court of the City of Norfolk observed that the only factor the Supreme Court has specifically set forth in distinguishing between a permanent and temporary nuisance is "whether human labor is necessary before an injury can occur . . . or, stated differently, whether the injury inflicted depends upon the use of the property." *Id.* at 547 (citing Allen, 118 Va. at 436, 87 S.E.2d at 561; *Southern Ry. v. White*, 128 Va. 551, 566, 104 S.E. 865, 870 (1920)). In *White*, the Supreme Court of Virginia relied on an 1851 decision from the Superior Court of Judicature of New Hampshire, then the highest appellate court in New Hampshire, and the predecessor to their current supreme court, and that court's definition of permanent nuisance:

> Wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, there the damage is an original damage, and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong to apply the labor necessary to remove the cause of injury, and can only cause it to be done by the expenditure of his own means.

*White*, 128 Va. at 565, 104 S.E. at 870 (quoting *Troy v. Cheshire RR.*, 23 N.H. 83, 102 (1851)); *accord Allen*, 118 Va. at 435-36, 87 S.E.2d at 560.

In *Schneider National Carriers, Inc. v. Bates*, 147 S.W.3d 264 (Tex. 2004), the Supreme Court of Texas noted:

> Most states define nuisances by looking at the structure of the source or the possibility of stopping it. Thus, some define a permanent nuisance as one that stems from a permanent structure being operated in a lawful, non-negligent manner. Others define a temporary nuisance as one that can be abated by injunction, and a permanent nuisance as one that cannot. Still others balance several factors in making the determination.

*Id.* at 271 (internal citations omitted).

The plaintiffs rely on *Cate v. Transcontinental Gas Pipe Line Corp.*, 904 F. Supp. 526 (W.D. Va. 1995), for support that the nuisance alleged in the instant case is temporary in nature. In *Cate*, the plaintiffs were property owners who brought suit against a gas pipe line company for violation of various Federal laws, as well as nuisance under Virginia law. The Court found that the alleged nuisance was temporary because the facility in question "pepper[ed] plaintiffs with the nuisance," which included

"disturbing noises and vibrations" as well as emissions. *Id.* at 539-40. *Cate* is distinguishable from the instant case because, even though some of the nuisances alleged in *Cate* would "fluctuate with prevailing winds, weather patterns, and industrial activity," the nuisances all originated from the ongoing operation of the facility responsible for creating the noises, vibrations, and emissions, that is, the source of the ongoing nuisance was caused entirely by, and directly related to, human labor. The Court went on to note: "It would appear that all of the alleged nuisances caused by the operation of the facility may well be candidates for substantial abatement." *Id.* at 539.

As alluded to by the Court in *Cate*, some courts have focused on whether the nuisance is abatable at a reasonable expense in distinguishing between a permanent and temporary nuisance. *E.g., Harrisonville v. W. S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 341 (1933) (applying Missouri law); *Ashland v. Kittle*, 305 S.W.2d 768, 769 (Ky. 1957); *Taylor v. Culloden Pub. Serv. Dist.*, 591 S.E.2d 197, 203 (W. Va. 2003); *accord Powell v. Tosh*, 929 F. Supp. 2d 691, 706 (W.D. Ky. 2013) (citing *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 625 (Ky. Ct. App. 2003) ("A permanent nuisance is any private nuisance that (1) cannot be corrected or abated at reasonable expense to the owner and (2) that is relatively enduring and not likely to be abated voluntarily or by court order.")); *see Reynolds Metals Co. v. Wand*, 308 F.2d 504, 509 (9th Cir. 1962) ("'A permanent nuisance is not necessarily one which can never, under any circumstances, be abated; but it is one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely.'" (quoting *Bainbridge Power Co. v. Ivey*, 152 S.E. 306, 306 (Ga. 1930))); *Cate*, 904 F. Supp. at 539-40; *see also Black's Law Dictionary* 1097-98 (8th ed. 2004) (defining "permanent nuisance" as "[a] nuisance that cannot readily be abated at reasonable expense," and "temporary nuisance" as "[a] nuisance that can be corrected by a reasonable expenditure of money or labor"). *But see Spicer*, 46 Va. Cir. at 547 (noting that the only Virginia authority the court found supporting the "proposition that the ability to abate a nuisance determines its permanence" was language in the Virginia Model Jury Instructions stating "the statute of limitations operates differently in actions for temporary and permanent nuisances. A temporary nuisance is one which is removable or abatable" (quoting Virginia Model Jury Instructions 1-26 [Scope Note])).

Even if the permanence of a nuisance itself is not determined, in toto, by its ability to be abated or corrected, the damages *resulting* from a nuisance are dependent, at least in part, upon whether it can be abated. If a nuisance can be abated, a plaintiff "is only entitled to such damages as he may have sustained up to the time of the abatement of the nuisance, not including damages for the permanent diminution in the value of his property." *Packett v. Herbert*, 237 Va. 422, 427, 377 S.E.2d 438, 442-43 (1989); *accord Cornwell v. Maruca*, 32 Va. Cir. 116, 118 (Loudoun Cnty.

1993); *see Dimmett v. Eskridge*, 20 Va. (6 Munf.) 308 (1819) (monographic note) ("The measure of damages in [the] case of a temporary, removable nuisance, is the loss sustained during the continuance of the nuisance, within the statutory period, and is to be ascertained by the rental or profit-earning value of the property if the nuisance did not exist."). *See generally* Restatement (Second) of Torts §§ 929, 930; J. E. Keefe, Jr., Annotation, *Damages for Diminution of Value of Use of the Property as Recoverable for a Permanent Nuisance Affecting Real Property*, 10 A.L.R.2d 669 (1950).

Here, a plain reading of the complaints reveals that, even when viewed in the light most favorable to the plaintiffs, the nuisance alleged in the complaints is permanent and not temporary. The complaints are replete with allegations supporting the permanent and enduring nature of the alleged nuisance. Given their complex and unwieldy structure, it is helpful to highlight the following instances from the complaints that support the permanent nature of the alleged nuisance:

That Defendants' actions constitute an "ongoing nuisance." (Compls. at ¶¶ 17, 32(d));

That there exists a "past, present, and future release of hazardous substances." (*Id.* at ¶¶ 32(a), 32(b));

That coal ash has "settled upon and continue[s] to settle upon Plaintiffs' properties." (*Id.* at ¶ 32(e));

That the coal ash "was, and is, taken up by the wind, inhaled by the Plaintiffs, and deposited, and is being deposited, upon the Plaintiffs, their homes and property and around the communities adjacent to the Fentress Site." (*Id.* at ¶ 146);

That "[e]xposed coal ash continues to leave the Fentress Site to this present day." (*Id.* at ¶ 151);

That "Plaintiffs are continually exposed to contaminated and radioactive coal ash and they have been injured, damaged, and traumatized as a result, suffering a continuing nuisance." (*Id.* at ¶ 176);

That "[c]oal ash and binding agent at the Fentress Site continues to be picked up by the prevailing winds." (*Id.* at ¶ 177);

That "MJM is a named defendant herein because it is the current owner of the property upon which the coal ash sits, and from which the nuisance continues to invade [sic]." (*Id.* at ¶ 182);

That "heavily polluted, toxic, and contaminated water physically invade[d] and spread into the aquifers from which the Plaintiffs drew their drinking water and settled and is settling onto their property, and will do so in the future in discharges of pollution driven by weather conditions and the movement of surface water, plus movement of water in the underground aquifers. Additionally, this radioactive and toxic coal ash was deposited on the homes and properties of the Plaintiffs and continues to do so via erosion, winds and surface flooding." (*Id.* at ¶ 195);

That "the physical condition of the contaminants from the Defendants' toxic and radioactive coal ash and binding agent [that] invaded the Plaintiffs' homes and property via airborne contamination has detrimentally changed the physical condition of Plaintiffs' land itself." (*Id.* at ¶ 197);

That that "toxic coal ash . . . settled and continues to settle upon all of the Plaintiffs' homes, property, real estate and persons. Through such physical invasion and noxious touching, this constitutes a continuing and on-going nuisance. All of the Plaintiffs' homes, property, real estate and persons have been invaded via airborne ash made up of deadly chemicals, metals, and contaminants, some of which are radioactive. The toxins carried, and continue to be carried, by forces of weather and wind, have resulted in a continuing nuisance and noxious touching upon the surfaces of all of the plaintiff's [sic] homes, property, real estate and persons." (*Id.* at ¶ 198);

That the "toxic airborne ash, which settled upon and continues to settle upon all of the Plaintiffs' homes, property, real estate and persons in continuing noxious touching, has damaged and continues to damage all of the Plaintiffs' homes, property, real estate and persons. Further, this damage will occur in the future until the source of the nuisance is removed in its entirety." (*Id.* at ¶ 199);

That "[a] ditch, running generally west to east, is located immediately south of the Fentress Site. This ditch lies within the bounds of these Plaintiffs' aforesaid property. Surface water runoff, originating from the Fentress Site, was and is collected in this ditch. Defendants' toxic and radioactive waste was deposited, and continues to be deposited, onto these Plaintiffs' aforesaid property by action of this surface water runoff. Additionally, the defendants' toxins leached, and continue to leach, via groundwater migration from the Fentress Site into the ditch and onto those Plaintiffs' properties. These toxins, in turn, were and are being deposited onto these Plaintiffs' aforesaid property. This constitutes an additional continuing noxious touching and nuisance in the nature of periodic waves of toxic deposits upon the property of the Murry Drive Ditch Nuisance Plaintiffs." (*Id.* at ¶ 201).

Further indicative of the plaintiffs' intent to plead a cause of action for permanent nuisance is the individual *ad damna* in the complaints, which each request diminution in property value "caused by the ongoing nuisance and actual physical invasion of his/her/their real property, by this radioactive and toxic coal ash waste." As previously discussed, a plaintiff may only be entitled to damages for diminution in property value where a permanent nuisance exists. *Packett*, 237 Va. at 427, 377 S.E.2d at 442-43.

The Court finds that the nuisance alleged in the complaints are of a permanent nature and, therefore, are barred by the statute of limitations. Accordingly, Dominion's motion for summary judgment on statute of limitations as to all plaintiffs who are not minors and who are not making personal injury claims is granted.

## II. *Headwaters' and VFL's Special Plea in Bar on the Statute of Limitations*

Defendants Headwaters and VFL have filed a special plea in bar on the statute of limitations. Headwaters and VFL specifically raised the issue of statute of limitations as an affirmative defense in their answer and grounds of defense filed April 18, 2014.

> A plea in bar asserts a single issue [of fact], which, if proved, creates a bar to a plaintiff's recovery. Usually, as a plea in bar reduce[s] litigation to a distinct issue of fact, the issue of fact asserted by the plea in bar is dispositive as to the entire suit. Although pleas in bar typically present a complete bar to the plaintiff's recovery, we have recognized that a plea in bar constitutes [either] a complete defense to the [complaint], or to that part of the [complaint] to which it is pleaded. That is, a plea in bar can be sustained even if it presents a bar to recovery to only some, but not all, of the plaintiff's claims.

*Smith v. McLaughlin,* 289 Va. 241, 252, 769 S.E.2d 7, 12-13 (2015) (internal quotation marks and citations omitted); *accord Tomlin v. McKenzie,* 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996).

For the reasons stated in section I, *supra,* Headwaters' and VFL's special plea in bar to the statute of limitations is sustained as to all the plaintiffs who are not minors and those who are not making personal injury claims.

## III. *MJM's Motion for Summary Judgment Based on Statute of Limitations*

Defendant MJM has filed a motion for summary judgment based on the statute of limitations. The Court notes that MJM did not raise the statute of limitations as an "affirmative defense specifically set forth in a responsive pleading" pursuant to Code § 8.01-235. It was not raised as an affirmative defense in MJM's answer filed on May 2, 2014, and MJM did not file a separate special plea to the statute of limitations. It appears to the Court that MJM first raised the issue in its motion for summary judgment filed on February 5, 2016. Rule 3:8(a) provides, in part, that a "demurrer, plea, motion to dismiss, and motion for a bill of particulars" are responsive pleadings; motions for summary judgment are not listed among this number.

The plaintiffs, however, did not object to or otherwise properly raise for the Court's consideration the issue of MJM asserting the statute of limitations by summary judgment. The plaintiffs responded to the substance of MJM's motion for summary judgment, both on brief and at the hearing, on the basis that the statute of limitations should not apply in the instant case, but did not object to the form by which the issue was raised by MJM. Therefore, the Court finds that plaintiffs have waived objection to any

defect which may exist in the form by which MJM asserted the statute of limitations.

Accordingly, for the reasons stated in section I, *supra,* MJM's motion for summary judgment based on statute of limitations is granted as to all the plaintiffs who are not minors and those who are not making personal injury claims.

### IV. *Headwaters' and VFL's Motion for Partial Summary Judgment*

Headwaters and VFL have filed a motion for partial summary judgment on plaintiff Jasmine Andrews's claims for emotional distress as set forth in case number CL12-475.

In *Bowers v. Westvaco Corp.*, 244 Va. 139, 419 S.E.2d 661 (1992), the Supreme Court considered what damages may be appropriately recovered as a result of a private nuisance. *Id.* at 141, 419 S.E.2d at 663 ("In these consolidated appeals, we consider whether certain acts are sufficient to constitute an actionable private nuisance and, if so, the appropriate damages which are recoverable as a result of the acts."). In *Bowers*, a truck staging operation was located approximately 25 feet from the Bowers' home. Mrs. Bowers became distraught, depressed, and extremely nervous as a result of the conditions cause by the truck staging operation and subsequently incurred medical expenses as a result. The Bowers' children experienced associated adjustment disorders. *Id.* at 142-44, 419 S.E.2d at 664-65. The Court held that a party in a nuisance case "is entitled to recover, as an element of damages, compensation for physical or emotional injuries resulting from a nuisance which *has* endangered 'life or health.'" *Id.* at 148, 419 S.E.2d at 667 (emphasis added) (quoting *National Energy Corp. v. O'Quinn*, 223 Va. 83, 85, 286 S.E.2d 181, 182 (1982)).

Here, Ms. Andrews has claimed damages, pursuant to *Bowers*, as a result of the alleged nuisance caused by the coal ash during construction of the golf course. In her answers to Headwaters' and VFL's interrogatories, Ms. Andrews states:

> [T]he black clouds of "dirt" began after the ash began to be dumped, by the truckload by VFL. At that time, I believed the misrepresentations of Dominion, which was the understanding of our community, that is, that the black clouds were as harmless as loose soil. As such, I did not consider them unusual, just the effects of a construction project. It was not until 2008 that I was told the truth, that these black clouds that I was breathing in and were landing on my home were dangerous fly ash from defendants [sic] Dominions [sic] waste material.

(Andrews's Resp. to Headwaters' Interrog. No. 1.) Ms. Andrews further stated in response to Dominion's Interrogatories:

> I saw the fly ash fall onto my property, and I breathed it in during those times that it was falling onto my property. At the time I had no knowledge that there were any "heavy metals, radioactive substance, hidden carcinogens, positions [sic], or other hazardous substances" [sic] in the fly ash. I believed . . . that the fly ash was "safe as dirt, non-hazardous and non-toxic."

(Andrews's Resp. to Dominion's Interrog. No. 16); *see also* (Andrews Resp. to Headwaters' Second Set of Reqs. for Admissions No. 7) (admitting that she did not know of the alleged dangers of the coal ash prior to 2008).

Ms. Andrews now alleges that she suffers emotional distress as a result of her exposure to the ash during construction:

> I now know that the coal ash/dust contains carcinogens and toxic substances that I breathed into my mouth, nose, throat and respiratory system for years. I now know that I was heavily exposed to coal ash dust in the air. I contend that this nuisance created by the Defendants, particularly, Dominion, made me uncomfortable in my home in the following ways: I was afraid to drink the water out my tap or to cook or shower using the well water; I hauled water to my home for use from a pump at the Baptist Church, I bought bottled water. All of this disrupted my life and my daily routine. I thought about my exposure every day and still do. I had the following symptoms: skin, hair and sinus issues that started in about 2004. Because of the project, I did not want to shower on the property because I was concerned about the water. I believe the stress of the project lead to the breakup of my family. My exposures [sic] continues to make me uncomfortable in my home and has destroyed my use and enjoyment of my property because I continue to be upset that I will develop additional diseases from the cell damage that has already happened as a result of this long-term exposure. One of my major concerns is the shock that I experienced when I discovered that Dominion's representations concerning the safety of the fly ash and that it was non-toxic and non-hazardous were false.

(Andrews's Resp. to Dominion's Interrog. No. 17.) Although Ms. Andrews contends that she has suffered emotional distress in the form of worry about her health as a result of exposure to the ash, she admits that she has not been diagnosed with any injury caused or aggravated by exposure to the ash and that she has not undergone treatment for any injury caused by exposure to the ash. (Andrews's Resp. to Headwaters' First Set of Reqs. for Admissions Nos. 1, 2 & 5.)

It is apparent that Ms. Andrews's claim for damages is, in essence, a claim for emotional distress caused by fear and anxiety of possible future injuries. The plain language of the Supreme Court's holding in *Bowers* makes clear that a plaintiff can only "recover, as an element of damages, compensation for physical or emotional injuries resulting from a nuisance which *has endangered* 'life or health.'" *Bowers*, 244 Va. at 148, 419 S.E.2d at 667 (emphasis added). The Supreme Court chose to use the present perfect tense of the verb "endanger" in their holding in *Bowers*. *The Chicago Manual of Style*, § 5.126, at 237 (16th ed. 2010) defines the present perfect tense as denoting "an act, state, or condition that is now completed or continues up to the present . . . . [It] refers to (1) a time in the indefinite past . . . or (2) a past action that comes up to and touches the present." *Id.* Likewise, *Webster's Third New International Dictionary* (2002) defines "present perfect," in part, as a verb tense that "expresses action or state completed at the time of speaking." *Id.* at 1794.

Importantly, *Bowers* does not go so far as to provide for compensation for physical or emotional injuries resulting from a nuisance which *may endanger* or *will endanger* life or health; thus, it does not authorize recovery for fear or anxiety of possible future injuries as sought by Ms. Andrews. Many courts have quoted, in one form or another, the maxim attributed to Lord Hardwicke to the effect that "the fears of mankind, though they might be reasonable ones, will not create a nuisance." *E.g., Mitchell v. Tennessee Valley Auth.*, 2015 U.S. Dist. LEXIS 56521, at *14 (D. Tenn. Apr. 30, 2015); *Ryan v. Tennessee Valley Auth.*, 2015 U.S. Dist. LEXIS 56521, at *12 (D. Tenn. Apr. 30, 2015); *Louisville & Nashville RR. v. Commonwealth of Ky.*, 31 S.W. 476 (Ky. 1895), aff'd 161 U.S. 677 (1896); *Mayor of Baltimore v. Fairfield Imp. Co.*, 39 A. 1081 (Md. 1898); *Cook v. Fall River*, 131 N.E. 346, 347 (Mass. 1921); *Franklin St. Methodist Episcopal Church v. Crystal Oil & Gas Co.*, 163 A. 910, 912 (Pa. 1932); *Baines v. Baker*, 1 Ambler 158, 27 Eng. Rep. 105 (Ch. 1752). *See generally Adams v. Star Enter.*, 51 F.3d 417 (4th Cir. 1995) (applying Virginia law).

The Court finds that plaintiff Jasmine Andrews's claim for emotional distress, which was caused by fear and anxiety of possible future injuries, is not of the type of envisioned or compensable under *Bowers*. Accordingly, Headwaters' and VFL's motion for partial summary judgment on plaintiff Jasmine Andrews's claims for emotional distress in case number CL12-475 is granted.